PEOPLE *v.* KROGOL

1. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY—DISCRETION.

The admission of photographs, like the admission of any other demonstrative evidence, is within the sound discretion of the trial judge.

2. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY—OBJECTIONS—BASES.

The admission of photographs may be objected to: (1) because they are not material to any point in issue, (2) because they do not adequately represent the person, place or thing photographed or (3) because they are calculated to inflame the minds of the jurors.

3. HOMICIDE—EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.

Admitting photographs of the decomposed body of the victim of the murder as evidence at the defendant's trial for first-degree murder was not an abuse of discretion where they shed light on the malice with which the crime was committed, illustrated the medical examiner's testimony and where they were not so gruesome as to inflame the minds of the jurors.

4. HOMICIDE — EVIDENCE — INFLAMMATORY PHOTOGRAPHS — ADMISSIBILITY.

Black and white photographs, taken ten feet from the subject, showing the decomposed body of the victim of the murder lying next to a cement block to which it was attached when recovered from a river, but with the facial features indistinguishable were not so gruesome as to inflame the minds of the jury against the defendant on trial for the murder.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 29 Am Jur 2d, Evidence §§ 783–787, 790, 792, 798.
Authentication of verification of photograph as basis for introduction in evidence. 9 ALR2d 899.
[5] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 49.
[6, 8] 5 Am Jur 2d, Appeal and Error §§ 533, 535.
[7, 8] 58 Am Jur, Trial § 459.
[9–11] 39 Am Jur, New Trial § 169.

5. CRIMINAL LAW—JUVENILE RECORD—PROSECUTOR'S REFERENCE—CLEAR INJUSTICE.

Mere mentioning of the defendant's having been in a youth home does not constitute a clear injustice even though reference to youth home residence is statutorily proscribed where the defendant's extensive criminal record was already before the jury (MCLA § 712A.23).

6. CRIMINAL LAW—IMPROPER ARGUMENT—APPEAL AND ERROR.

Matters of appeal are not proper questions to be argued before a jury in a criminal case; however, where there has been no objection to the improper argument, the objection will not be heard on appeal except where the remarks were so prejudicial that they could not have been cured by a cautionary instruction to the jury.

7. CRIMINAL LAW—IMPROPER ARGUMENT—CAUTIONARY INSTRUCTIONS.

A prosecutor's reference to a defendant's right of appeal is improper but the impropriety is curable by a cautionary instruction from the bench.

8. CRIMINAL LAW—PROSECUTOR'S REFERENCE—PROPER REBUTTAL.

The prosecutor's reference to the defendant's having the right to appeal was a fair rebuttal to defense counsel's statement that defendant was already under sentence of 20 to 30 years on another conviction, thus giving the jury the impression that the issue of guilt in this case was practically moot; any prejudice caused by the prosecutor's statement could have been removed by a cautionary instruction.

9. CRIMINAL LAW—NEW TRIAL—RECANTING AFFIDAVIT—DISCRETION.

Granting a new trial in a criminal case on the basis of a recanting affidavit is in the trial judge's discretion.

10. CRIMINAL LAW—NEW TRIAL—RECANTING AFFIDAVITS.

Recanting affidavits of witnesses in criminal cases who attempt to prove that they perjured themselves at trial must be carefully scrutinized.

11. CRIMINAL LAW—NEW TRIAL—RECANTING AFFIDAVIT—DISCRETION.

Denial of a motion for a new trial, where the motion was based on the recanting affidavit of an important prosecution witness claiming his testimony at the defendant's trial was untrue, that the police had promised him leniency on a charge he was facing and had promised to give his wife the reward money offered for the crime defendant was on trial for was not a

clear abuse of discretion where the police officer denied any promises of leniency and where an extensive hearing on the motion was held.

Appeal from Wayne, James N. Canham, J. Submitted Division 1 December 5, 1970, at Detroit. (Docket No. 7057.)    Decided January 18, 1971. Leave to appeal denied May 11, 1971.  384 Mich 839.

David Allen Krogol was convicted of first-degree murder.  Defendant appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Carl Levin* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant on appeal.                                                ;

Before: V. J. Brennan, P. J., and J. H. Gillis and Jeannette,* JJ.

V. J. Brennan, P. J.  Defendant, David Allen Krogol, was convicted by a jury of murder in the first degree contrary to MCLA § 750.316 (Stat Ann 1954 Rev § 28.548) and sentenced to life imprisonment.

On February 17, 1967, Anthony Volente, a supermarket manager, closed his store in Wyandotte and started for home.  Just as he pulled into his driveway, he was abducted by someone in a black Mercury who had been seen following him.  He was forced

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

to return to the store and open the safe, which contained $2,600. Volente was not seen again until his decomposed body was found in the Detroit River on July 2, 1967. The victim had been shot several times, weighted down with a cement block, and dumped into the river. A search for a black Mercury convertible with a taillight missing led to Krogol's arrest.

Defendant makes four assignments of error, none of which requires reversal.

Defendant first contends that it was error for the trial court to admit into evidence the photographs[1] of the decomposed corpse of the victim, because they were not material to any point in issue and they were so gruesome as to inflame the minds of the jurors. *People* v. *Turner* (1969), 17 Mich App 123.

The photographs in question were taken immediately after the corpse was recovered. The photograph before us is a 3-1/2″ x 5″ black and white picture of the victim lying beside the cement block which was attached to the body. It appears that the picture was taken at a distance of approximately ten feet and that the features of the face are not distinguishable.

The admission of photographs, like the admission of any other demonstrative evidence, lies within the sound discretion of the trial court. *People* v. *Rogers* (1968), 14 Mich App 207. Guidelines to aid the trial judge in the exercise of his discretion were laid down by this Court in *People* v. *Brannon* (1968), 14 Mich App 690, 693, as follows:

"The admission of photographs may be objected to: 1) because they are not material to any point

---

[1] Although a number of photographs were taken by the medical examiner at the time the body was found, all but one have been lost. Counsel have stipulated that this assignment of error will be based solely on the remaining photograph and the description of the lost photographs made by Dr. Murray in the record.

in issue, see *People* v. *Becker, supra;*[2] 2) because they do not adequately represent the person, place or thing photographed, see *People* v. *Herrell* (1965), 1 Mich App 666; or 3) because they are calculated to inflame the minds of the jurors."

Applying these criteria to the case at bar, we do not agree that the evidence was inadmissible under the first or third ground.

The case of *People* v. *Eddington* (1970), 23 Mich App 210, is practically on all fours with the case at bar. There, the defendant was charged with first-degree murder also. When the prosecution attempted to introduce five color photographs of the victims as found by the police, the defendant not only interposed the identical objections urged here but also relied on the same case, namely, *People* v. *Turner, supra.* The Court's discussion of those issues is dispositive of the defendant's contention:

"We hold that the photographs were admissible. The scenes depicted were helpful in throwing light on a material issue—namely, the malice with which the crimes were committed. The people had charged that defendant feloniously, wilfully, and with malice aforethought did kill and murder Carl and Gertrude Middledorf. The photographs, detailing the nature and extent of the wounds inflicted, were admissible for purposes of clarifying and illustrating testimony relating to the victims' appearance and condition, and particularly for purposes of substantiating the people's theory concerning the atrociousness of the crimes, or the malice with which they were committed. See Annotation, 73 ALR2d 769, 831. *Cf. People* v. *Bergin* (1969), 16 Mich App 443.

"*People* v. *Turner, supra,* upon which defendant relies, is distinguishable from the present case. The photographs there involved depicted 'the corpse as it is left, not by its assailant, but by the probing in-

---

2 *People* v. *Becker* (1942), 300 Mich 562.

struments and procedures of the medical examiner.' 17 Mich App at 132. Moreover, 'photographs taken during an autopsy however, must be subjected to more careful scrutiny.' *Id.* In the present case, the gruesome nature of the photographs is not the product of an intervening medical examiner. The photographs depict the bodies of the victims as left at the scene by the assailant.

"The question of the admissibility of photographs objected to as prejudicial and inflammatory is within the discretion of the trial judge. *People* v. *Brannon* (1968), 14 Mich App 690; *People* v. *Bergin, supra; People* v. *Turner, supra.* Finding no clear abuse of this discretion under the facts and circumstances of this case, we conclude that the photographs in question were properly admitted". *People* v. *Eddington, supra,* 227, 228.

Likewise, the photographs in this case served both to illustrate the medical examiner's testimony and to shed light on the malice with which the crime was committed. Nor do we feel that the black and white photographs of the decomposed body were so gruesome as to inflame the minds of the jury. It was, thus, no abuse of discretion to allow them to be placed before the jury.

Defendant next alleges that the court erred in permitting the prosecutor to elicit from a witness that he had met David Krogol in the Detroit Youth Home. It is contended that the reference to the youth home violates MCLA § 712A.23 (Stat Ann 1962 Rev § 27.3178 [598.23]) which provides:

"Sec. 23. A disposition of any child under this chapter, or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this chapter."

The people in their brief correctly point out that one who is in a youth home is not necessarily there as a result of a disposition in a juvenile proceeding; he may be there because his parents have neglected or abandoned him. Furthermore, the defendant failed to object to the statement. In the absence of a showing of a clear injustice, this Court will not entertain issues raised for the first time on appeal. *People* v. *Ray Clifton Smith* (1969), 20 Mich App 243. We do not feel that the mere mention of defendant's being in a youth home demonstrates such injustice in view of the fact that defendant's extensive criminal record was already before the jury.

Defendant's third assignment of error is that the prosecutor's remarks during closing argument were so prejudicial that defendant was deprived of a fair trial. We do not agree.

Before setting out the remarks, the context in which they were made must be understood. In his closing argument, counsel for the defense stated:

"The testimony here discloses, no matter what your verdict may be in this case, for most of the rest of his life, David Krogol will be in jail, in Jackson Prison serving 20 to 30 years for robbery armed that he pled guilty to."

In an attempt to explain to the jury that there was in fact a good reason for prosecuting Krogol, the prosecutor later replied:

"Why would we do that, why David Krogol, this man, he is doing 20 to 30 years as counsel pointed out, why him? First of all you must realize that anybody under sentence has the right to appeal, that is the right given to any man. If he can afford an attorney fine, if he cannot afford an attorney or for the price to order a transcript of his trial, you people pay for his lawyer, all he has to do is ask for

one, that is why Pistole[3] did that in this case. He pled guilty, he was sentenced, got another attorney and through the work of that attorney, through motions and legal proceedings, Judge Murphy felt that his plea was not a voluntary plea under the circumstances and granted him a new trial.

\* \* \*

"Counsel mentioned that this defendant is doing 20 to 30 years, this same mode of appeal is available for this defendant."

No objection was made at trial to these remarks.

Defendant urges that the prosecutor's remarks were highly prejudicial, because they lulled the jury into thinking that they were relieved of their ultimate responsibility, *i.e.*, any errors that they might make in bringing in a verdict of guilty would be corrected on appeal. It is further argued that, despite the absence of objection, the court was duty-bound to keep counsel within the boundaries of legitimate argument.

It is quite true, as defendant points out, that matters of appeal are not proper questions to be argued before a jury. See *People* v. *Connors* (1930), 251 Mich 99. However, failure to object to remarks made by the prosecutor bars their review except in those cases where the remarks are so prejudicial that they could not have been cured by a cautionary instruction, *People* v. *Humphreys* (1970), 24 Mich App 411 (*leave to appeal denied* 383 Mich 824).

We feel that a cautionary instruction, had one been requested, could have cured the defect in this case for two reasons. First, it has been held that the mention of defendant's right to appeal, although error, is curable by instructions from the bench.

---

[3] Pistole was a former friend of Krogol's who testified as a prosecution witness.

*People* v. *Connors, supra.*[4]   Secondly, assuming that the statements in this case are stronger than those in the *Connors* case, we have the additional factor that they were prompted by defense counsel's statement concerning defendant's sentence under the armed robbery charge.   These remarks were a fair rebuttal to *defense counsel's* attempt to lull the jury into believing that the issue of guilt or innocence in this case was practically a moot question. Accordingly, we cannot say that the argument of the prosecutor was so prejudicial that it could not have been eradicated from the minds of the jurors.

Defendant's final contention is that it was an abuse of discretion for the trial court to deny his motion for a new trial when Bobby Whitehead, an important prosecution witness, filed an affidavit recanting his testimony at trial.

After defendant was found guilty, Bobby Whitehead filed an affidavit stating that "Everything I testified to is a lie on my part".   Whitehead further stated that certain officers promised him that they would help him out in a charge he was facing at the time and would also see that his wife got the $5000 reward offered for Volente's murderer.

The motion for new trial was considered by the same judge who tried the case.   A hearing was held which fills over 100 pages of transcript.   Whitehead testified that he was promised leniency by three officers of various departments and was given a "general outline" from which to study what testimony was expected of him.   The three officers also testified; they denied making any promises of leni-

---

[4] In *Connors, supra,* p 101, a cautionary instruction by the trial court was found to have cured the following statement:

"'If you acquit John Connors, the people of the State of Michigan have no recourse; the people of the State of Michigan have no appeal. If you made a mistake the people cannot complain.   But on the other hand, members of the jury, to convict John Connors and you have made a mistake, he has the right to appeal.'"

ency and stated that the only writing given to the defendant was a copy of his own statements which he had volunteered prior to trial. After all the testimony was in, the judge determined that Whitehead's affidavit was false and denied the motion for new trial.

The granting of a new trial on the basis of a recanting affidavit lies within the sound discretion of the trial court. *People* v. *Mason* (1968), 10 Mich App 404; *People* v. *Lowenstein* (1944), 309 Mich 94. Recanting affidavits of witnesses who attempt to prove that they perjured themselves at trial must be carefully scrutinized. *People* v. *Smallwood* (1943), 306 Mich 49. In deciding whether the court abused its discretion, due regard is given to his superior opportunity to appraise the credibility of the trial witnesses. *People* v. *Nickopoulous* (1970), 26 Mich App 297; *People* v. *Andrews* (1960), 360 Mich 572.

In the case at bar, there was much testimony taken on the motion before the court. The judge's conclusions demonstrate that he carefully weighed and analyzed all the evidence in coming to a decision. Since the defendant has failed to make a clear showing of an abuse of discretion, it is our duty to affirm.

For the foregoing reasons, the defendant's conviction is affirmed.

Affirmed.

All concurred.