PEOPLE v TURNER

PEOPLE v MORGAN

PEOPLE v RILEY

Docket Nos. 78-5202, 43316, 45247. Submitted June 26, 1980 at Detroit.—Decided September 2, 1980. Leave to appeal applied for.

Defendants, Talmadge Turner, Willie J. Morgan and Rex D. Riley, were charged with first-degree murder, assault with intent to murder and felony-firearm in the Recorder's Court of Detroit. The case arises out of a shooting incident that occurred in the early morning hours of May 28, 1978. There was testimony that defendants belonged to a group known as "The Enforcers" and that they had a confrontation with another group, the "Fenkell Avenues", the day before. The shooting was alleged to have been in retaliation for the earlier incident. Accomplice testimony was provided by Elzy Jones, a former codefendant who had pled guilty to manslaughter and possession of a firearm in the commission of a felony. Jones testified that he and the defendants spotted persons they thought were Fenkell Avenues on a street corner in the Fenkell-Mendota area of Detroit. Defendant Turner dropped Jones, Morgan and Riley off in an alley behind Mendota. Morgan was armed with Jones's shotgun, while Riley carried Turner's .38-caliber revolver. The three walked around the sides of a house and viewed a group of persons on and around the porch of the house across the street. Although there was apparently some confusion over whether the persons were actually members of the Fenkell Avenues, Morgan and Riley fired in the direction of

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 906 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error §§ 891-894.
[3] 75 Am Jur 2d, Trial §§ 630, 704.
[4] 75 Am Jur 2d, Trial § 193.
[5] 75 Am Jur 2d, Trial §§ 876-882.
[6] 75 Am Jur 2d, Trial § 317.
[7] 29 Am Jur 2d, Evidence §§ 786, 787.
[8] 4 Am Jur 2d, Appeal and Error § 544.
[9] 21 Am Jur 2d, Criminal Law § 119.

the porch. John Lathan, Jr., who was standing near the porch, was shot and died as a result of the wound received. A second person, Alex Young, was wounded. Neither the victims nor the other persons near the porch had any association with the Fenkell Avenues. Defendants were convicted of second-degree murder, assault with intent to commit murder and felony-firearm, Robert P. VanWiemeersch, J. Defendants appeal alleging numerous errors and the appeals were consolidated. *Held:*

1. Defendants claimed the court erred in shifting the burden of proof by adding to the Standard Jury Instruction two additional sentences regarding reasonable doubt. The sentences were: "In other words, if you can assign a reason you have a reasonable doubt", and "[i]f you cannot assign a reason you have no reasonable doubt". Since no objection was made to the instruction, reversal is precluded absent a showing of manifest injustice. Jury instructions are to be considered as a whole. So viewed, the instruction did not alter the burden of proof.

2. The inadvertent reading to the jury of the felony-murder portion of the first-degree murder statute by the court was harmless, since defendants were not convicted of first-degree murder.

3. Reinstruction on second-degree murder in response to a jury request for reinstruction was proper.

4. The prosecutor's comment that one of the possible crimes the jury might find defendants' guilty of was a misdemeanor was proper rebuttal in direct response to arguments of defense counsel.

5. It was not improper for a trial court to instruct a jury that a lesser included offense was a misdemeanor since such an instruction involving disposition is similar to giving the jury such information by the approved practice of reading the statutes to the jury which state whether the crime is a felony or misdemeanor.

6. Prosecutorial appeals for sympathy for the decedent and descriptions of the procedures by which the defendants were charged were proper rebuttal as direct responses to defense appeals for sympathy.

7. The admission in a homicide trial of photographs depicting the body of a victim is a matter within the discretion of the trial court, provided they are not offered with the sole intention of inflaming the jury. The test is whether the photographs are substantially necessary or instructive to show material facts or conditions, or merely calculated to excite passion and prejudice. Photographs otherwise admissible for a proper purpose are not

rendered inadmissible merely because they vividly depict the details of a gruesome or shocking crime. A photograph of the decedent's body was properly admitted to establish the identity of the body examined by the coroner after identity was raised as an issue by defendants.

8. One not in possession of a firearm may be punished as an aider and abettor to a felony-firearm offense.

Affirmed.

1. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

Failure to object to a jury instruction precludes reversal on the issue absent a showing of manifest injustice.

2. APPEAL — COURTS — JURY INSTRUCTIONS.

Instructions to a jury are reviewed as a whole rather than in small excerpts.

3. CRIMINAL LAW — INSTRUCTIONS TO JURY — REINSTRUCTION.

A trial court in a first-degree murder trial in which the defendant was convicted of second-degree murder does not commit error in reinstructing on second-degree murder in response to a request for reinstruction by the jury.

4. CRIMINAL LAW — PROSECUTOR'S REMARKS — DISPOSITION OF DEFENDANT.

Neither the prosecutor nor defense counsel may comment during trial upon the consequences of a jury finding the defendant guilty of any lesser offense; however, where a prosecutor's remarks regarding such consequences are in response to defense counsel's comments regarding the same subject and the remarks are brief and not prejudicial, no reversible error occurs.

5. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSE — DISPOSITION.

It was not improper for a trial court to instruct a jury that a lesser included offense was a misdemeanor since such an instruction involving disposition is similar to giving the jury such information by the approved practice of reading the statutes to the jury which state whether the crime is a felony or a misdemeanor.

6. CRIMINAL LAW — ARGUMENT OF COUNSEL — CURATIVE INSTRUCTIONS.

A prosecutor's remarks to the jury were not sufficiently improper to require reversal of a conviction where the remarks were either proper argument based upon the evidence presented or

responses to matters raised by the defendants in their proofs and closing arguments and where certain of the latter remarks, although they could be seen as improper if standing alone, do not constitute reversible error because of their responsive nature and because any unduly prejudicial effect could have been eliminated by a curative instruction to the jury if one had been requested upon a timely objection.

7. HOMICIDE — PHOTOGRAPHIC EVIDENCE — ADMISSIBILITY.

The admission in a homicide trial of photographs depicting the body of a victim is a matter within the discretion of the trial court, provided they are not offered with the sole intention of inflaming the jury; the test is whether the photographs are substantially necessary or instructive to show material facts or conditions, or merely calculated to excite passion and prejudice; photographs otherwise admissible for a proper purpose are not rendered inadmissible merely because they vividly depict the details of a gruesome or shocking crime.

8. CRIMINAL LAW — APPEAL — JUDICIAL MISCONDUCT — CRITICISM OF COUNSEL.

A trial court's criticism of defense counsel may be ground for reversal; the dispositive question is whether the court's participation in the trial denied the defendants a fair and impartial trial by unduly influencing the jury.

9. CRIMINAL LAW — AIDING AND ABETTING — FELONY-FIREARM — POSSESSION OF FIREARM.

One not in possession of a firearm may be punished as an aider and abettor to a felony-firearm offense.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy L. Cronin* and *Anne B. Wetherholt,* Assistant Prosecuting Attorneys, for the people.

*Gromek, Bendure & Thomas,* for defendant Turner.

*James Krogsrud,* Assistant State Appellate Defender, for defendants Riley and Morgan.

Before: J. H. GILLIS, P.J., and V. J. BRENNAN and A. C. MILLER,* JJ.

J. H. GILLIS, P.J. Defendants were charged with first-degree premeditated murder, MCL 750.316; MSA 28.548, assault with intent to murder, MCL 750.83; MSA 28.278, and possession of a firearm while in the commission of a felony, MCL 750.227b; MSA 28.424(2). They were convicted on October 23, 1978, by a Detroit Recorder's Court jury of second-degree murder, MCL 750.317; MSA 28.549, assault with intent to murder and possession of a firearm while in the commission of a felony. Each defendant was sentenced to concurrent five- to ten-year sentences for second-degree murder and assault with intent to murder, and to two years for possession of a firearm in the commission of a felony. Defendants now appeal as of right.

The case arises out of a shooting incident that occurred in the early morning hours of May 28, 1978. There was testimony that defendants belonged to a group known as "The Enforcers" and that they had a confrontation with another group, the "Fenkell Avenues", the day before. The shooting was alleged to have been in retaliation for the earlier incident. Accomplice testimony was provided by Elzy Jones, a former codefendant who had pled guilty to manslaughter and possession of a firearm in the commission of a felony. Jones testified that he and the defendants spotted persons they thought were Fenkell Avenues on a street corner in the Fenkell-Mendota area of Detroit. Defendant Turner dropped Jones, Morgan and Riley off in an alley behind Mendota. Morgan was armed with Jones's shotgun, while Riley car-

* Circuit judge, sitting on the Court of Appeals by assignment.

ried Turner's .38-caliber revolver. The three walked around the sides of a house and viewed a group of persons on and around the porch of the house across the street. Although there was apparently some confusion over whether the persons were actually members of the Fenkell Avenues, Morgan and Riley fired in the direction of the porch. John Lathan, Jr., who was standing near the porch, was shot and died as a result of the wound received. A second person, Alex Young, was wounded. Neither the victims nor the other persons near the porch had any association with the Fenkell Avenues.

Defendants' first argument on appeal is that the trial judge shifted the burden of proof by deviating from the standard jury instruction on reasonable doubt. Although CJI 3:1:05 was utilized, two additional sentences were read:

"Reasonable Doubt. A reasonable doubt is a fair doubt growing out of the testimony, the lack of testimony, or the unsatisfactory nature of the testimony in the case. It is not a mere imaginary or possible doubt, but a fair doubt based on reason and common sense. It is such a doubt as to leave your minds after a careful examination of all the evidence in the case in the condition that you cannot say you have an abiding conviction to a moral certainty of the truth of the charge made against the Defendants. *In other words, if you can assign a reason you have a reasonable doubt. If you cannot assign a reason you have no reasonable doubt.*" (Emphasis supplied.)

No objection was made to the instruction. Therefore, reversal is precluded absent a showing of manifest injustice. *People v Johnson,* 93 Mich App 667, 669; 287 NW2d 311 (1979).

The reasonable doubt standard is of constitutional dimension. It reduces convictions based on

factual errors and effectuates at trial the all-important presumption of innocence. *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Although we do not wish to encourage unnecessary variations from the standard jury instructions, it is apparent that the additions here were nonprejudicial and that the reasonable doubt standard remained intact.

The standard instruction warned that a reasonable doubt "is not a mere imaginary or possible doubt, but a fair doubt based on reason and common sense". The additional comments merely reminded that a reasonable doubt must be the product of such a rational thought process. Jury instructions are to be considered as a whole and not in small excerpts. *People v McFadden,* 73 Mich App 232, 237; 251 NW2d 297 (1977). Viewed in context the two additional sentences did not alter the burden of proof.[1] No manifest injustice is apparent.

Defendants' second claim on appeal is that the murder verdict was coerced by the court's instructions. Defendants initially argue that the instructions overemphasized murder over the lesser offenses. The trial court, in reading the first-degree murder statute to the jury, included that portion dealing with felony murder.[2] At one point, the

---

[1] *Dunn v Perrin,* 570 F2d 21, 23 (CA 1, 1978), is readily distinguishable. There, reasonable doubt was defined as "doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason". The instruction lowered the burden of proof by implying that a doubt based on reason was not a reasonable doubt unless the reason was good and sufficient.

[2] MCL 750.316; MSA 28.548 reads:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life."

trial judge lost his place and began to reread the murder instruction but was promptly halted by the prosecution. Subsequently, when the jury requested reinstruction on second-degree murder and manslaughter by intentional aiming of a firearm without malice, MCL 750.329; MSA 28.561, the court reread that portion of CJI 16:2:01 concerning second-degree murder but had to be halted to prevent continuation into the elements of first-degree murder. In contrast, the instructions on the lesser included offenses consisted primarily of a reading of the applicable statutes. The jury was twice given the definitions of manslaughter by intentional aiming of a firearm without malice and careless, reckless or negligent use of a firearm. MCL 752.861; MSA 28.436(21). In addition, an instruction on involuntary manslaughter was read. CJI 16:4:04.

Defendants argue that the inadvertent reading of the felony-murder portion of the statute constituted an instruction on an offense neither charged nor supported by the evidence. *People v Milton,* 81 Mich App 515, 519; 265 NW2d 397 (1978). However, the jury was immediately informed that the law, as it applied to the case, made "wilful, deliberate and premeditated murder" murder in the first degree, and they received detailed instructions only on premeditated first-degree murder. Neither the prosecution nor defense mentioned felony murder in their arguments. In any event, the defendants were not convicted of first-degree murder, so no harm occurred. Further, there was no undue emphasis on the murder instructions as a whole. The court was prevented from initially repeating the instructions. The subsequent reinstruction on second-degree murder was proper since it was only in response to the jurors' request.

*People v McGuire,* 39 Mich App 308, 319-320; 197 NW2d 469 (1972). Finally, the statutory definitions of the lesser included offenses were adequate instruction on those crimes. Although the statutory definition of manslaughter by intentional aiming of a firearm without malice was not accompanied by the specific jury instruction, the general instruction in involuntary manslaughter was read. CJI 16:4:04. Since counsel did not object to the substitution and request a more detailed instruction, no reversible error exists. *People v Manchester,* 235 Mich 594; 209 NW 815 (1926).[3]

Defendants also argue that the verdict was coerced by the instruction that malice could be inferred from the use of a dangerous weapon. This contention is without merit. Although it is error to instruct that the law implies malice from certain circumstances or that malice is presumed, malice may be inferred from other facts and circumstances. *Cf. People v Richardson,* 409 Mich 126; 293 NW2d 332 (1980). The instruction did not prevent consideration of defendants' accident theory.

Defendants' third claim on appeal is that reversible error took place when both the prosecutor and trial court noted that one of the lesser included offenses was a misdemeanor. Defendants argue that this improperly focused juror attention upon the possible disposition of the defendants.

During rebuttal, the prosecutor claimed that Morgan sought conviction "of the lowest possible charge that you could convict him of in this state", and he reminded the jurors that "careless and

---

[3] *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974), does not mandate reversal. There, the trial court's confusion of voluntary manslaughter and involuntary manslaughter effectively deprived the defendant of instruction on the former. Here, adequate instruction was given.

reckless use of a firearm * * * isn't even a felony". The instructions later confirmed that the charge was a misdemeanor.

The general rule is that neither counsel nor the court should address the question of disposition upon conviction. *People v Szczytko,* 390 Mich 278, 285; 212 NW2d 211 (1973). However, the prosecutor's remarks were in direct response to the arguments of defense counsel. The jury had previously been urged to consider the young age of the defendants and to make "the punishment * * * fit the crime". The prosecutor's comments were proper rebuttal. *People v Hall,* 83 Mich App 632; 269 NW2d 476 (1978), *People v Ashford,* 91 Mich App 693; 283 NW2d 830 (1979). The jury was ultimately instructed not to be concerned with what penalties might be imposed, eliminating any prejudicial impact. See *People v Szczytko, supra,* 290.

The trial court's comments were made in the context of reading the applicable statutes. Such remarks are permissible where the classification appears in the statute itself. *People v Nichols,* 391 Mich 813 (1974), *People v Ritchie,* 52 Mich App 380; 217 NW2d 439 (1974). No error is apparent.

Defendants' fourth claim on appeal involves a variety of alleged prosecutorial misconduct. Defendants contend the prosecutor insinuated that Morgan had been involved in other murders when the following exchange occurred on cross-examination:

"*Q. [By Mr. Resnick]:* What did you think happened?
"*A. [Defendant Morgan]:* I didn't think nothing happened you know, when the police, you know when they picked us up they just told us that they had us for suspicion of murder, which I didn't know which murder they was talking about.
"*Q.* Were you involved in any other murders?
"*A.* No."

The exchange took place while the prosecutor was questioning Morgan about an earlier statement to the police. Morgan attempted to extricate himself from the statement by claiming that he "didn't know which murder they was talking about". The answer implied that there were other murders and it was reasonable for the prosecutor to make further inquiry. When Morgan responded in a negative manner the prosecutor properly left the subject area. The questioning was therefore dissimilar to that in *People v Di Paolo,* 366 Mich 394; 115 NW2d 78 (1962), and those cases relying on *Di Paolo.* In *Di Paolo,* the defendant was repeatedly asked if he was guilty of a prior rape charge, when in fact he had been found not guilty. The manner of questioning was such to imply that the defendant was lying. Likewise, those cases following *Di Paolo* are characterized by repeated questioning in the face of initial denials in situations where it was apparent that innuendo was purposefully used to prejudice. See, *e.g., People v Walker,* 86 Mich App 155; 272 NW2d 222 (1978), *People v Ball,* 33 Mich App 288; 189 NW2d 816 (1971), *People v Jones,* 32 Mich App 309; 188 NW2d 190 (1971). Such misconduct was not present below.

Defendants also claim that the prosecutor referred to facts not in evidence during his closing argument. The allegation is based on the prosecutor's review of Morgan's custodial statement and the implications it contained of defendant Turner's guilt. Defendants ignore the fact that the statement was offered into evidence by Morgan himself without objection. The content of the statement was appropriate subject matter for review.

Defendants also insist that misconduct was committed when the prosecutor appealed to juror sym-

pathy for the decedent[4] and when he described the
procedures by which the charges were brought.[5]

[4] The prosecutor remarked during rebuttal:

"Do you think it matters to Cora Lathan that her beloved husband
John Lathan, age 39, was shot down in cold blood by an eighteen year
old, or a twenty year old, or a thirty year old, or a sixty year old? An
eighteen year old can commit first degree murder as well as a thirty
year old or a sixty year old or a ninety year old person.

\* \* \*

"Mr. Lauck talks about not depriving this eighteen year old Defen-
dant of the right to shape up and grow up. Well, how about Mr.
Morgan depriving Mr. John Lathan of his right to life and liberty and
the pursuit of happiness. How about that deprivation of a life that
Mr. Morgan decided to terminate. You know we're talking about—
let's talk about the Defendants' lives and let's talk about what it's
gonna do to them. Well, sympathy and prejudice should have no part
in your considerations. And that argument was designed specifically
to draw your sympathy and prejudices and try to get you biased for
this young man. Well, let's talk about the victim of these crimes for
once. What it does to them. What it does to the family. What it does
to his children that will never have a father again. Do we take that
into consideration?

\* \* \*

"\* \* \* No, Mr. Lauck, I remember what he said about that Mr.
Lauck will be the last person that Mr. Morgan will see. Well, I bet
you Mr. John Lathan would like to see anybody other than a grave
and to be buried under that ground for these acts."

[5] The argument included the following statement:

"Mr. Lauck then tells you that I abused my power in charging
these Defendants with murder one, or the prosecution abused his
power. Well, let me tell you the safeguards, ladies and gentlemen,
afforded Mr. Morgan's client, or Mr. Lauck's client in this case, as
well as, the other Defendants. First, there has to be citizens that
complain about activity. The police have got to get a report. They get
tons of reports and tons of statements. They present all those to the
prosecutor's office. The prosecutor's office, an assistant has to look
through that and decide, what, if any, crime was committed. Then
they have to go before an examining magistrate and swear under
oath to the facts contained in the Complaint and Warrant. Then
there has to be a preliminary examination. At the preliminary
examination the prosecution has to show by a preponderance of the
evidence that a crime was committed, what crime was committed, and
probable cause to believe the Defendants did it. That was conducted
in this case. Defendants were bound over for trial on murder in the
first degree. Then there is a time period for defense counsels and
other attorneys to file motions, either to reduce the charges because
the prosecution abused his discretion in charging, or that the examin-
ing magistrate abused his discretion in charging the Defendants. All
those steps were completed. This case went to trial—didn't go to trial
on the reduced charge of careless or reckless use of a firearm. This

The remarks were in direct response to appeals for sympathy by the defendants and to the defendants' claim that the prosecutor had abused his discretion in charging first-degree murder. As such, they were proper rebuttal. *People v Hall, supra, People v Dersa,* 42 Mich App 522; 202 NW2d 334 (1972). Further, since any harm could have been eliminated by curative instructions had they been requested, reversal is precluded by defendants' failure to object and by the absence of manifest injustice. *People v Duncan,* 402 Mich 1, 16-17; 260 NW2d 58 (1977).[6]

Defendants' fifth claim of error is that a fair trial was denied when a photograph of the decedent was admitted into evidence. The admission of photographs depicting the body of a victim is a matter within the discretion of the trial court, provided they are not offered with the sole intention of inflaming the jury. *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972). The test is whether the photographs are substantially necessary or instructive to show material facts or conditions, or merely calculated to excite passion and prejudice. *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973). Photographs otherwise admissible for a proper purpose are not rendered inadmissible merely because they bring vividly clear the details of a gruesome or shocking crime. *People v Eddington, supra.*

Here, admission was necessary to show that the body examined by the coroner was indeed that of the victim. It is apparent that the prosecution had

case went to the trial on the case of first degree murder, and now ladies and gentlemen it's up to you to determine whether or not there was any kind of abuse of discretion. Does the facts in this case show murder in the first degree because you are the final judge."

[6] The jury did receive a general warning that sympathy, passion or prejudice were not to influence their verdict.

no intention of offering the photograph until the identification of the body was challenged. The court did not abuse its discretion in admitting the evidence.

Defendant Turner argues on appeal that comments of the trial judge denied him a fair trial before an impartial jury. Since none of the comments were objected to, reversal is precluded absent a manifest injustice.

In his preliminary remarks to the jury the court pointed out that the defendants were not required to take the stand.[7] Such remarks are impermissible where they create an unfavorable inference regarding the decision not to testify. *Griffin v California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965). However, the comments here merely warned the jury not to take the failure to take the stand as evidence of guilt. No reversible error occurred. *People v Archie Smith (On Remand),* 68 Mich App 527; 243 NW2d 677 (1976).

At the conclusion of the prosecutor's rebuttal, the court commented that the arguments had been "quite impassioned", but told the jury that his instructions would come from a neutral voice. Defendant Turner now argues that this disparaged his trial counsel, effectively telling the jurors to ignore the closing arguments. While a trial court's criticism of counsel may be grounds for reversal, the appropriate test is whether the court's participation denied the defendant a fair and impartial trial by unduly influencing the jury. *People v Moss,* 70 Mich App 18; 245 NW2d 389 (1976).

---

[7] The court stated:

"The Defendants have a right not to testify, and that may not be held against them. This is a little bit different than what we are normally used to in our everyday life. If someone accuses you of taking a piece out of the cake that was recently baked, your first impulse is to say, I didn't do it. In the Courtrooms no answer is required."

Here, the court did not disparage counsel. The remarks were complimentary in nature and not such as to induce the jury to disregard the closing arguments. We perceive no manifest injustice to justify reversal.

Defendant Turner also singles out the court's instruction on aiding and abetting as having reminded the jury of the evidence against him, bolstering what was otherwise a weak case.[8] This argument is also without merit. The court only made brief reference to the evidence of Turner's involvement and it is evident that it acted less to bolster the prosecution's case than to help explain the concept of aiding and abetting. *Cf. People v Skowronski*, 61 Mich App 71; 232 NW2d 306 (1975).

Defendant Turner's final claim on appeal merits little discussion. He argues that he should not have been convicted for possession of a firearm in the commission of a felony as an aider and abettor. However, a majority of the decisions from this Court have followed the lead of *People v Tavolacci*, 88 Mich App 470; 276 NW2d 919 (1979), in holding that actual personal possession of a firearm is

[8] The instruction read in part:

"It is charged in this case that Mr. Morgan and Mr. Riley, either directly committed the crimes charged, which is the crime of murder in the first degree and assault with intent to commit murder, and felony firearm, or that they intentionally aided or assisted another in the commission of that crime. All persons who aid or assist in the commission of a crime are as liable as if they had directly committed the crime and may be convicted of the principal offense, or as an aider and abettor.

"If it charged in this case that, or it is claimed in this case that Mr. Turner, did not directly commit the crime, but that he intentionally aided or assisted another in the commission of that crime. By the testimony we've heard that he drove the car to the scene, other testimony which you will recall yourself.

"All persons who aid or assist in the commission of a crime are as liable as if they had directly committed the crime and may be convicted of the principal offense as an aider or abettor."

unnecessary. Here, there was ample evidence to show that Turner acted to encourage, with an intent to aid his codefendants in obtaining the weapons utilized. *Cf. People v Atkins,* 93 Mich App 524; 286 NW2d 901 (1979).

Likewise, there is no merit to the contention of defendants Morgan and Riley that conviction for both possession of a firearm in the commission of a felony and the underlying felony violates their constitutional right against double jeopardy. *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979).

Affirmed.