PEOPLE v FUZI #2

Docket No. 54064. Submitted March 5, 1982, at Grand Rapids.—
Decided May 19, 1982.

Wendell A. Fuzi was convicted of first-degree premeditated mur-
der by a jury in Manistee Circuit Court and was sentenced to
life imprisonment, Charles A. Wickens, J. Defendant appeals.
*Held:*

1. Defendant was not denied his Sixth Amendment right to
confront witnesses by one witness's assertion of her Fifth
Amendment privilege against self-incrimination when ques-
tioned by defense counsel about her knowledge of and involve-
ment in several unrelated homicides. Evidence of the witness's
unrelated criminal activity was entirely collateral and relevant,
if at all, only to her general credibility.

2. No error resulted from the fact that the police investigator
to whom the witness conveyed her knowledge of the unrelated
homicides was not called to testify concerning that knowledge.

3. The trial judge did not abuse his discretion by admitting
into evidence photographs of the homicide victim. No error
resulted from the admission of the photographs.

Affirmed.

1. CRIMINAL LAW — CONFRONTATION — SELF-INCRIMINATION.

A defendant was not denied his Sixth Amendment right to
confront witnesses where a witness asserted her Fifth Amend-
ment right against self-incrimination when questioned by de-
fense counsel about her knowledge of and involvement in
several homicides unrelated to the one for which defendant was
on trial and that evidence was entirely collateral and relevant
only to the witness's general credibility (US Const, Am VI;
Const 1963, art 1, § 20).

REFERENCES FOR POINTS IN HEADNOTES
[1] 21A Am Jur 2d, Criminal Law §§ 721, 722.
   81 Am Jur 2d, Witnesses § 30 *et seq.*
[2] 29 Am Jur 2d, Evidence § 785.
[3] 29 Am Jur 2d, Evidence § 787.

2. Evidence — Photographs — Homicide.
    The admission into evidence of photographs of the corpse of a
    homicide victim is a matter addressed to the sound discretion of
    the trial judge.

3. Evidence — Photographs.
    Photographs which are pertinent, relevant, competent or mate-
    rial on any issue in a case are not rendered inadmissible
    merely because they show the details of a gruesome or shocking
    crime.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Brent V. Danielson*, Prosecuting Attorney, and *Thomas C. Nelson*, Assistant Attorney General, for the people.

*Terence R. Flanagan*, Assistant State Appellate Defender, for defendant on appeal.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

D. F. WALSH, P.J. Defendant, Wendell Albert Fuzi, was charged with the first-degree premeditated murder of William Mowrey. MCL 750.316; MSA 28.548. He was found guilty as charged by a Manistee County Circuit Court jury and was sentenced to life imprisonment.

In exchange for her testimony in this case and in the Wexford County case where defendant was charged with the murder of Gordon Clark,[1] Susan Mishler was granted immunity from prosecution in the two cases.

Ms. Mishler described the events of the evening of May 10, 1979, when, after discussing where they could get some money, she, defendant and William

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *People v Fuzi #1*, 116 Mich App 246; 323 NW2d 354 (1982). Venue was changed in the Wexford County case to Isabella County. Defendant was convicted of first-degree murder (felony) in that case.

Mowrey drove to the neighborhood of 77-year-old Gordon Clark's apartment. Defendant and Mowrey got out of the car and defendant said he would come back with some money. Fifteen minutes later they came running back to the car. Mowrey was upset but defendant was laughing. Mowrey asked defendant something like: "Do you think he will die?" Defendant replied, "Yes, he probably will." They drove to a lake where defendant and Mowrey divided up the money from a wallet defendant had. He then threw the wallet in the lake. After a while, all three went home. At about 3 a.m., defendant came back to Mishler's house with Mishler's friend Norma Ray. All three drove to Clark's apartment. Defendant and Norma Ray went inside the apartment. When they returned, Norma Ray told defendant that Mowrey "knew too much" and that defendant had to kill him. The three of them then went home. Clark was found dead in the morning. It was eventually determined that he had died as a result of blunt blows to his body.

At 7 a.m. on May 11, 1979, defendant came to Mishler's house and asked her to drive him to Mowrey's house. They picked up Mowrey and drove to a restaurant where defendant spoke with Norma Ray. Mishler, defendant and Mowrey then drove to a wooded area. As they were walking into the woods, defendant hit Mowrey with a stick. Mowrey fell on the ground and defendant told him he was going to kill him because he knew too much. Defendant cut up Mowrey's shirt and tied his hands and feet and blindfolded him with the strips of fabric. Defendant laid Mowrey on his stomach, sat on his back, pulled back his head and slit his throat. He stabbled him several more times and then treatened to kill Mishler if she told

anyone about the killing. A few days later Mishler left Michigan with Norma Ray.

On August 3, 1979, defendant led police to Mowrey's body. He first told the police that two people —"Chuck" and a female—had killed Mowrey. Later, defendant told the police that the female was Mishler. His original story that he had not been present at the killing later changed to an admission that he had been there but had not taken part. Later, he said that he had stabbed Mowrey but that he had been forced to do so by "Chuck". He later said that "Chuck" was Norma Ray.

At trial, defendant testified that he had been forced by Norma Ray to kill Mowrey. He had gone to the wooded area with Mishler, Mowrey and Norma Ray. After Mishler hit Mowrey with a stick, Norma Ray pulled a gun and told defendant to kill him. Mishler gave defendant a knife.

Defendant's cousin testified that defendant had taken him to see Mowrey's body and had admitted killing him.

The first issue raised by defendant on appeal concerns Ms. Mishler's assertion of her Fifth Amendment privilege against self-incrimination when questioned by defense counsel about her knowledge of and involvement in several homicides unrelated to the Clark and Mowrey killings. It is defendant's contention on appeal that he was denied his constitutional right to confront witnesses. US Const, Am VI; Const 1963, art 1, § 20.

To the extent that defendant complains of the limited scope of his cross-examination of Mishler, there was no deprivation of his Sixth Amendment right. Evidence of Mishler's unrelated criminal activity was entirely collateral and relevant, if at all, only to her general credibility. *United States v*

*Cardillo,* 316 F2d 606 (CA 2, 1963). See, also, *People v Fuzi #1,* 116 Mich App 246, 323 NW2d 354 (1982).

To the extent that defendant argues that Nelson Gelinas, a police investigator to whom Mishler conveyed her knowledge of the unrelated homicides, should have been called to testify concerning that knowledge, there was clearly no error. Gelinas was not called as a witness in this case. Defense counsel never requested that he be produced as a prosecution witness. We decline to second-guess defense counsel's apparent strategy in proceeding without this witness. Moreover, even if Gelinas had been called, defendant has suggested no permissible avenue by which he could have been questioned concerning the specific instances of Mishler's conduct. MRE 608(b).

Defendant also argues that the trial court erred in admitting into evidence two photographs of Mowrey's corpse. The photographs were taken in August, 1979, approximately three months after the killing, and showed the body in a partially decomposed state.

The admission into evidence of photographs of the corpse of a homicide victim is a matter addressed to the sound discretion of the trial judge. *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297 (1972). Photographs which are pertinent, relevant, competent or material on any issue in the case are not rendered inadmissible merely because they show the details of a gruesome or shocking crime. *Id.,* 562-563, *People v Turner,* 99 Mich App 733, 745; 298 NW2d 848 (1980), *rev'd on other grounds* 411 Mich 897 (1981) and 411 Mich 1037 (1981).

We are not persuaded that the trial court abused its discretion in admitting these photo-

graphs. The photographs served to illustrate the testimony of a forensic anthropologist and to corroborate the testimony concerning a blindfold and concerning the injuries suffered by Mowrey. They depict the corpus delicti. Nor does it appear that the photos were so gruesome as to prejudice the jury and to deter them from the proper exercise of their fact-finding role. Thus, we find no reversible error. *People v Krogol,* 29 Mich App 406; 185 NW2d 408 (1971), *lv den* 384 Mich 839 (1971), *People v Eddington, supra.*

Affirmed.