PEOPLE v FUZI #1

Docket No. 53339. Submitted March 5, 1982, at Grand Rapids.—
Decided May 19, 1982.

Wendell A. Fuzi was convicted of first-degree felony murder in
Isabella Circuit Court, Paul F. O'Connell, J. The chief prosecu-
tion witness, Susan Mishler, was granted immunity from prose-
cution in exchange for her testimony which implicated the
defendant in the murder. Sometime prior to the trial, Mishler
had given a list of 13 alleged homicide victims to a police
investigator. Mishler had admitted involvement in at least
some of the alleged homicides. Mishler notified the trial court
that she would assert her Fifth Amendment privilege against
self-incrimination if questioned about the other homicides. The
court ruled that neither Mishler nor the police investigator
could be questioned about the other homicides. The defendant
appeals alleging that: (1) the trial court erred in ruling that
evidence of Mishler's knowledge of, and involvement in, several
killings other than those for which she had been granted
immunity could not be introduced at the trial; (2) he was
denied a fair trial by the introduction of evidence of prior
consistent statements made by Mishler; and (3) the instructions
to the jury were erroneous in that they did not set forth as an
essential element of first-degree felony murder the intention to
kill, the intention to do great bodily harm, or the wanton and
willful disregard of the likelihood that the natural tendency of
the defendant's conduct was to cause death or great bodily
harm. *Held:*

1. The trial court's suppression of evidence of Mishler's

REFERENCES FOR POINTS IN HEADNOTES

[1] 21A Am Jur 2d, Criminal Law §§ 937, 940.
 81 Am Jur 2d, Witnesses § 37.
 Prejudicial effect of prosecution's calling as witness, to extract
   claim of self-incrimination privilege, one involved in offense with
   which accused is charged. 86 ALR2d 1443.
[2] 21A Am Jur 2d, Criminal Law §§ 956-958.
 81 Am Jur 2d, Witnesses §§ 464, 472, 520.
[3] 5 Am Jur 2d, Appeal and Error §§ 601, 602.
 81 Am Jur 2d, Witnesses § 596 *et seq.*
[4] 20 Am Jur 2d, Courts §§ 233, 236.
 40 Am Jur 2d, Homicide § 509.

unrelated criminal activity was not erroneous. Because the evidence of Mishler's unrelated criminal activity did not relate to matters beyond her general credibility, the trial court's ruling that she could not be questioned concerning that activity did not unconstitutionally restrict the defendant's confrontation of this witness.

2. Admission of the evidence of prior consistent statements of Mishler was harmless error. While evidence of prior consistent statements is inadmissible unless some well-recognized exception applies, the absence of objection at the trial precludes reversal based on the improper introduction of such evidence unless the defendant can demonstrate that a manifest and serious error resulting in a denial of fundamental justice has occurred. The admission of the evidence of the prior consistent statements was not offensive to the maintenance of the integrity of the judicial system. The record contained no suggestion that the calling of the witnesses who testified regarding the prior consistent statements was deliberate misconduct on the part of the prosecutor. In addition, there was overwhelming evidence supporting the defendant's conviction.

3. When the defendant's trial took place, the common-law felony-murder doctrine was still in effect in Michigan. Thus, the trial court did not err by not instructing the jury that an essential element of felony murder was the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of the . defendant's conduct was to cause death or great bodily harm.

Affirmed.

1. CRIMINAL LAW — PRIVILEGE AGAINST SELF-INCRIMINATION.

There is little danger of prejudice to a defendant where a government witness during cross-examination invokes the privilege against self-incrimination as to purely collateral matters and the witness's testimony may be used against the defendant; however, if the government witness by invoking the privilege against self-incrimination during cross-examination precludes inquiry into details of his direct testimony, there may be substantial danger of prejudice to the defendant and the witness's testimony should be stricken in whole or in part.

2. CRIMINAL LAW — CROSS-EXAMINATION — CONSTITUTIONAL LAW.

The extent to which a witness may be cross-examined is a matter to be determined by the trial court in exercise of its sound

discretion; however, the limitation on cross-examination which prevents a person charged with a crime from placing before the jury facts from which bias, prejudice or lack of credibility of a prosecution witness might be inferred constitutes denial of the right of confrontation guaranteed by the Sixth Amendment; for cross-examination purposes, a distinction should be drawn between matters of general credibility and answers which might possibly establish untruthfulness with respect to the specific events of the crime charged (US Const, Am VI).

3. Evidence — Prior Consistent Statements — Appeal.

Prior consistent statements of a witness are generally inadmissible; however, the absence of objection at trial will preclude reversal based on the improper introduction of such evidence unless the defendant can demonstrate that a manifest and serious error resulting in a denial of fundamental justice has occurred.

4. Homicide — Felony Murder.

The rule that a jury instruction which indicates that an inference of the malice necessary for a felony-murder conviction may be drawn solely from a defendant's intent to commit an underlying felony constitutes error applies prospectively to trials which were in progress or which occurred subsequent to the decision of the Supreme Court in *People v Aaron,* 409 Mich 672, November 24, 1980.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *William E. Molner,* Assistant Attorney General, for the people.

*Terence R. Flanagan,* Assistant State Appellate Defender, for defendant on appeal.

Before: D. F. Walsh, P.J., and Cynar and W. F. Hood,* JJ.

D. F. Walsh, P.J. Defendant, Wendell Albert Fuzi, was charged with the first-degree murder (felony) of Gordon Clark in Wexford County. MCL 750.316; MSA 28.548. Defendant's motion for change of venue was granted. He was found guilty

* Circuit judge, sitting on the Court of Appeals by assignment.

as charged by an Isabella County jury. He was sentenced to life imprisonment to be served in solitary confinement at hard labor.

In exchange for her testimony in this case and in a Manistee County case where defendant was charged with the murder of William Mowrey,[1] Susan Mishler was granted immunity from prosecution in the two cases.

Ms. Mishler testified that defendant came to her home on the evening of May 10, 1979. They drove around Cadillac for a while and picked up William Mowrey. After discussing where they might be able to get some money, they drove to the apartment of 77-year-old Gordon Clark. Mowrey and defendant went up to the apartment. Mishler stayed in the car. About 15 minutes later, Mowrey and defendant came running back to the car and all three drove to Berry Lake. Mowrey appeared sick but defendant was laughing. Defendant said he had knocked down the old man and had taken a wallet from the apartment. Mowrey and defendant divided the money and defendant threw the wallet in the lake. Mishler drove Mowrey and defendant home and returned to her own home. Later that evening, defendant and Mishler's friend Norma Ray came to Mishler's house. All three drove to Clark's apartment. Norma Ray and defendant went into the apartment and came out with another wallet. They all went home.

The next morning, Mishler, Mowrey and defendant drove to a wooded area in Manistee County where defendant killed Mowrey. Defendant told Mishler that he had to kill Mowrey because Mowrey "knew too much". The jury was instructed that evidence of the killing of Mowrey was admit-

---

[1] *People v Fuzi #2,* 116 Mich App 277; 323 NW2d 358 (1982). Defendant was convicted of first-degree premeditated murder in that case.

ted for the limited purpose of showing defendant's consciousness of guilt for the killing of Mr. Clark.

Defendant was apprehended in a Wexford County breaking and entering on August 3, 1979. At that time, defendant led police to the wooded area in Manistee County where Mowrey's body was located. Defendant also told the police that Gordon Clark had been murdered. Although Clark's death was originally attributed to a heart attack, his body was disinterred in August, 1979, and an autopsy revealed that his death had been caused by blows to his body from a blunt object.

Evidence of various confessions by defendant was admitted. Defendant testified at trial that he had been drinking alcohol and taking drugs on May 10, 1979. He could not recall many of the events of May 10, 1979. The theory of the defense was insanity.

The first issue raised by defendant on appeal concerns the trial court's ruling that evidence of Mishler's knowledge of, and involvement in, several killings other than the Clark and Mowrey homicides, for which she had been granted immunity, could not be introduced at trial. Sometime prior to trial, Mishler had given a list of 13 homicides which had allegedly occurred in various Michigan counties to Nelson Gelinas, a police investigator. Mishler had admitted involvement in at least some of the alleged homicides. Of the 13 homicides, the police had been able to confirm only the Clark and Mowrey killings. The other homicides were not related to the Clark and Mowrey cases. Mishler notified the trial court in this case that she would assert her Fifth Amendment privilege against self-incrimination if questioned about the other homicides. The trial court ruled that neither Mishler nor Gelinas could be questioned

about the other homicides. Defendant argues that the effect of this ruling was to deny him his constitutional right to the confrontation of witnesses. US Const, Am VI; Const 1963, art 1, § 20.

In *United States v Cardillo,* 316 F2d 606 (CA 2, 1963), the court discussed the assertion of a witness's privilege against self-incrimination and its effect on an accused's right to confront witnesses. If a witness's assertion of the privilege merely precludes inquiry into collateral matters bearing only on the witness's general credibility, the witness's testimony may be used against the defendant. If assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination, the witness's testimony should be stricken in whole or in part. *Id.,* 611. If the purpose of the attempted cross-examination is a particular attack relating to the specific events of the crime charged, a restriction of such cross-examination may result in a denial of a defendant's Sixth Amendment right. *United States v Garrett,* 542 F2d 23 (CA 6, 1976). It is not permissible, for example, to curtail an accused's attempt to establish a witness's bias or interest in the outcome of the prosecution. *Id.*

The relevant inquiry, therefore, is whether the intended cross-examination, to which the witness pleads the Fifth Amendment, relates only to general credibility. If the accused's legitimate purpose is to go beyond an attack on the witness's general credibility, the witness's assertion of the Fifth Amendment and the consequent restriction on the scope of cross-examination may constitute reversible error.

In this case, the only purpose for which defendant sought to introduce the evidence of Mishler's knowledge of and involvement in unrelated crimi-

nal activity was to attack her general truthfulness. There was no contention at trial that the evidence had any other relevance. On appeal defendant does not propose any other theory of relevance. Upon careful review of the record, we find that this evidence is relevant, if at all, only to Mishler's general credibility.

Because the evidence of Mishler's unrelated criminal activity did not relate to matters beyond her general credibility, the trial court's ruling that she could not be questioned concerning that activity did not unconstitutionally restrict defendant's confrontation of this witness. Defense counsel took full advantage of the many opportunities to introduce evidence which seriously attacked her credibility. The trial court had discretionary authority to allow questioning of Mishler concerning specific instances of her conduct for the purpose of attacking her character regarding truthfulness. MRE 608(b)(1). In this case, however, the trial court's exercise of discretion, in light of Mishler's legitimate assertion of her Fifth Amendment privilege,[2] can in no way be characterized as abusive. Moreover, because Gelinas was not a character witness, there was no triggering of the trial court's discretion to determine the admissibility of his testimony concerning the unrelated criminal activity of Mishler. MRE 608(b)(2).[3] We are not persuaded that the trial court's suppression of evidence of Mishler's unrelated criminal activity was erroneous.

---

[2] MRE 608 provides: "The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility."

[3] It is well-established that a witness may not be impeached by producing extrinsic evidence of collateral facts. *People v Teague*, 411 Mich 562; 309 NW2d 530 (1981). A witness's credibility may not be attacked by extrinsic evidence of specific instances of the witness's conduct. MRE 608(b).

Defendant also argues that he was denied a fair trial by the introduction of evidence of prior consistent statements made by Mishler. Two police officers were called as rebuttal witnesses and were questioned concerning the similarity between Mishler's testimony and her various prior statements. There was no defense objection to the testimony of those rebuttal witnesses.

While evidence of prior consistent statements is inadmissible unless some well-recognized exception applies, the absence of objection at trial will preclude reversal based on the improper introduction of such evidence unless the defendant can demonstrate that a manifest and serious error resulting in a denial of fundamental justice has occurred. *People v Therrien,* 97 Mich App 633; 296 NW2d 8 (1979). Even if such bolstering evidence is admitted over well-founded defense objection, the error may be harmless. *People v Davis,* 106 Mich App 351; 308 NW2d 206 (1981).

The instant record contains absolutely no suggestion that the calling of these rebuttal witnesses was deliberate misconduct on the part of the prosecutor. We do not find that admission of the now-challenged testimony was offensive to the maintenance of the integrity of the judicial system. Additionally, we find overwhelming evidence supporting defendant's conviction, including his confessions, the killing of Mowrey as evidence of defendant's consciousness of guilt, psychological testimony establishing defendant's sanity, and the trial testimony of Mishler. We are not persuaded that, absent this rebuttal testimony, even one juror would have likely voted to acquit defendant. Admission of this testimony was, therefore, harmless error. In our judgment, the error was not so manifest and so serious as to constitute fundamental injustice.

Finally, defendant argues that the jury instructions were erroneous in that they did not set forth as an essential element of first-degree felony murder the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's conduct was to cause death or great bodily harm.

In *People v Aaron,* 409 Mich 672, 722-723; 299 NW2d 304 (1980), the Supreme Court noted that Michigan had thus far recognized the common-law felony-murder doctrine, which defines malice as including the intent to commit the underlying felony. Under pre-*Aaron* law, therefore, the jury instructions in this case were proper.

In *Aaron,* the Supreme Court abrogated the common-law felony-murder doctrine and held that malice—defined as the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of the defendant's behavior is to cause death or great bodily harm—is an essential element of any murder. *Id.,* 728. The Court's holding, however, applies only to trials in progress on the date of the *Aaron* opinion (November 24, 1980) and to those trials occurring after that date. *Id.,* 734. When defendant's May, 1980, trial took place, the common-law felony-murder doctrine was still in effect in Michigan. See *People v Wilson,* 411 Mich 990 (1981) and *People v Brady Smith,* 108 Mich App 338; 310 NW2d 235 (1981).

Affirmed.