PEOPLE v THOMAS

1. ROBBERY—ARMED ROBBERY—INTENT—INSTRUCTIONS TO JURY—
   HARMLESS ERROR.

   An instruction to the jury that to establish a charge of armed
   robbery it must be proven that the money or property was
   taken *without* felonious intent was not reversible error, where
   the obvious misstatement was immediately corrected in the
   further instructions, the misstatement was not objected to at
   the trial, and no manifest injustice resulted.

2. CRIMINAL LAW—RES GESTAE WITNESSES—ACCOMPLICES—INDORSE-
   MENT.

   A prosecutor has no duty to indorse accomplices as res gestae
   witnesses.

3. CRIMINAL LAW—ACCOMPLICES—"DEALS"—PROSECUTOR'S DUTY.

   The prosecution had no affirmative duty to disclose before the
   jury the fact that an agreement had been made with an alleged
   accomplice, in return for his testimony, that the prosecutor
   would not seek to have him waived from the jurisdiction of the
   probate court where the defendant and his counsel were aware
   of the agreement from the time of the preliminary examina-
   tion, no denial of the deal was ever made, and defense counsel
   did not bring out the existence of the "deal" during cross-
   examination nor did he ask for jury instructions concerning the
   agreement's possible effects upon the accomplice's credibility as
   a witness.

4. CRIMINAL LAW—EVIDENCE—TRIAL STRATEGY—IMMUNITY.

   The decision to bring to the attention of a jury the fact that an
   alleged accomplice has been granted immunity is a matter of
   defense counsel's strategy and the disclosure of such fact to the
   jury is not required of the prosecution where the prosecution

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 810 *et seq.*
[2, 3] 21 Am Jur 2d, Criminal Law § 118.
[4] 21 Am Jur 2d, Criminal Law § 146 *et seq.*
[5] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent
    Children §§ 4, 8.

has disclosed the matter to defendant and his attorney and has not allowed any falsehoods to go uncorrected.

5. CRIMINAL LAW—SENTENCE—JUVENILE RECORD.
   Juvenile records may be considered by the court in imposing sentence.

Appeal from Recorder's Court of Detroit, Harvey F. Tennen, J. Submitted Division 1 June 8, 1973, at Detroit. (Docket No. 14628.) Decided September 26, 1973.

Milton L. Thomas was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Joseph B. Szeremet,* Assistant State Appellate Defender, for defendant.

Before: BRONSON, P. J., and V. J. BRENNAN and WALSH,* JJ.

WALSH, J. The appellant was convicted of the crime of armed robbery, contrary to MCLA 750.529; MSA 28.797. He was sentenced to a term of 20 to 40 years in prison and appeals.

The crime with which defendant was charged took place on March 1, 1971 at approximately 7:30 p.m. at the Crest Drugstore in Detroit.

The owner of the drugstore, Joseph Rogoff, testified that on that date while he was standing behind the pharmaceutical counter in the store, a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

man identified as the defendant came behind the counter with a gun and ordered everyone to get down on the floor.

Mr. Rogoff stated that the defendant asked him for a drug, Debutal. Mr. Rogoff gave him two 500-tablet bottles of this drug. Mr. Rogoff was also forced to open the safe from which the defendant took approximately $1100 as well as the pharmacist's gun.

According to the testimony of one Steve Petrucci, a stockboy at the Crest Drugstore, the defendant was aided in the perpetration of this crime by another individual.

One Woodrow Smith, an alleged accomplice of the defendant, testified at trial for the people after being promised immunity from waiver to Recorder's Court. Mr. Smith's testimony implicated the defendant and one Lawrence Dumas in this robbery. Mr. Smith testified that he remained in an automobile during the course of the robbery. He stated that the defendant, while leaving the scene of the crime, accidentally shot himself in the leg. Mr. Smith also claimed that the defendant had stolen, among other things, two bottles of Debutal and a gun.

Defendant's first allegation of error is that the trial court improperly instructed the jury with respect to an essential element of the crime of armed robbery, i.e., that the property must be taken with felonious intent. In his instructions to the jury the trial judge stated:

"Robbery is defined to be a felonious taking of money or goods of any value from the person of another or in his presence or against his will by violence or by putting him in fear. In order to establish a charge of robbery it must be proven beyond a reasonable doubt, all reasonable doubt. I will define this term to you. That

some money or other property was stolen that that property or money was taken *without felonious intent,* that is to say with purpose or design and intent to permanently deprive the lawful owner of possession of the same. That taking from a person of another or in his presence money or property must be taken from the person or in his presence or against his will by force or violence or putting him in fear.

"In order to substantiate a charge made in the information, the people must prove beyond a reasonable doubt, first that this offense was committed in the city of Detroit as charged in the information; second that the money or other property was stolen from the person in the presence of the complaining witness; third that it was of some value; *fourth it was taken with a felonious intent;* fifth that it was taken from the person of the complaining witness; sixth that it was taken against his will; seventh that it was taken either by force or by violence or by assault or by putting the complaining witness in fear and at the time that the defendant was armed with a dangerous weapon or an article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon." (Emphasis supplied.)

Obviously, in the first quoted paragraph, the trial judge misspoke himself. However, this misstatement was virtually immediately corrected as can be gleaned from an examination of the entire quotation, *supra.*

In *People v Spaulding,* 42 Mich App 492, 496; 202 NW2d 450, 452 (1972), this Court stated:

"When reviewing an instruction to determine whether or not it stated the applicable law or prejudiced the defendant, we will examine the instruction as a whole rather than in small excerpts. *People v Pearson,* 13 Mich App 371 [164 NW2d 568] (1968), and *People v Haggai,* 332 Mich 467 [52 NW2d 186] (1952)."

Moreover, defendant did not object to this misstatement. In *People v Nelson,* 35 Mich App 368;

192 NW2d 682 (1971), the trial court correctly instructed the jury at one point on a necessary element of self-defense, that is, that there must have been no way open whereby the defendant could have retreated. At a later point in his instructions, the trial judge stated that "there must have been some way open whereby he could have retreated". This Court held that the misstatement was error but thereafter stated:

"[T]he defendant did not object at trial, but, rather, presents it for our consideration upon appeal.

"This Court will not reverse on the basis of an error which was not objected to at trial unless manifest injustice would otherwise result. GCR 1963, 516.2, and *People v McClure* (1971), 29 Mich App 361 [185 NW2d 426]. We conclude it is unlikely that the court's misstatement misled the jury which was previously correctly instructed and to whom had been explained the logic of the rule. As in *People v Darwin Brown* (1968), 15 Mich App 50 [166 NW2d 7], any error which existed was harmless." 35 Mich App 368, 370; 192 NW2d 682, 684.

The foregoing analysis is equally applicable to the instant case. Thus, no reversible error occurred from the misstatement.

Defendant's next allegation of error is that the trial court erred in granting the prosecution's motion to indorse Woodrow Smith, defendant's alleged accomplice, after the jury had been impaneled.

This claim of error is entirely vitiated by the well settled rule that the people need not indorse accomplices as res gestae witnesses. *People v Henderson,* 47 Mich App 53; 209 NW2d 326 (1973); *People v Peck,* 39 Mich App 150; 197 NW2d 346 (1972). Since the prosecutor had no duty to indorse Mr. Smith as a res gestae witness, error cannot be

predicated upon his late, albeit unnecessary, motion to do so.

Defendant next contends that the prosecution had an affirmative duty to disclose before the jury the fact that an agreement had been made between the prosecutor's office and Mr. Smith whereby in return for Smith's testimony, the prosecutor would not seek to have him waived from the jurisdiction of the probate court (Mr. Smith was a juvenile) to Recorder's Court.

In the instant case there is no doubt that defendant and his attorney were aware of the grant of immunity from the time of the preliminary examination. The same attorney represented the defendant both at the preliminary examination and at trial. The following colloquy took place at defendant's preliminary examination:

*"The Court:* Yes, Milton Lawrence Thomas. Now, the matters to be put on the record here. You may be seated, sir.

"Yesterday we had quite a discussion, the people's witness was a minor and was been—had been according to his own testimony involved in this matter. The court itself was remiss in not realizing that I should have told —stopped the testimony of this minor, because—and advise him of his rights against self-incrimination, because the prosecution could and can ask for a warrant from probate court jurisdiction to circuit or recorder's court jurisdiction and prosecute him on the basis of his admitted involvement in this case.

"The court was remiss in not doing that. We have since discussed the matter—I have since discussed the matter with the prosecution and defense counsel present. It's my understanding that for whatever it's worth the prosecution is going to put on the record a promise that it will not ask for a waiver to recorder's court, and as best it can grant immunity with whatever power it may have to grant immunity to the defendant. To the witness. Is that correct, counsel for the people?

*"Mr. Gibbs:* It is, your Honor, in the case of the People of the State of Michigan versus Milton Lawrence Thomas, those matters which Mr. Smith testifies to here in court involving any culpability as regards to the incidents that arose from the Crest Drugstore on 3-1-71, at 2860 East Seven Mile Road within the City of Detroit, we will not move for a waiver of probate jurisdiction to have the witness put in—

*"The Court:* Charged—

*"Mr. Gibbs:* —jeopardy.

*"The Court:* Do you understand that Woodrow Smith?

*"The Witness:* Yes.

*"The Court:* In other words, what we're saying is that I should have told you yesterday that you don't have to testify where what you say can find you guilty of committing a crime. And the prosecutor, even though you're a minor, has the authority to ask the court to try you as an adult. Just what is said, he is saying that you will not be. And that you are immune from prosecution from this charge, anything you say. So that you cannot, in fact, get yourself in trouble over what you say. Do you understand that?"

Thus, there can be no claim of ignorance on the part of defendant or his attorney of this grant of immunity to Woodrow Smith. Defendant's attorney did not bring out the existence of this "deal" during cross-examination of Mr. Smith. Nor did he ask for a jury instruction concerning the possible effects of such a "deal" upon Mr. Smith's credibility as a witness.

In *People v Nettles,* 41 Mich App 215; 199 NW2d 845 (1972), the prosecutor disclosed to everyone but the jury the fact that charges against two alleged accomplices of the defendant had been reduced in return for their agreement to testify against the defendant. Yet both of the accomplices, upon cross-examination by defense counsel, denied that any "deal" had been made. This Court in reversing defendant's conviction stated:

"There is no question that the prosecutor and the trial judge must have been and were aware of the fact that these were not truly stated factual recitations; that in fact there was an arrangement because it was so stated on the record outside of the presence of the jury. This was known to everybody but the jury which was the 'trier of the facts'. Yet, under our law the 'trier of the facts' is entitled to full information on matters pertaining to the credibility of witnesses, and in fact it is always argued by the prosecution and instructed by the court that the jury must consider the 'bias or prejudice or interest in the outcome of the proceeding' on the part of the witnesses in determining their credibility. This fact is so well known, and because it is equally well known that the prosecutor has the obligation to protect the interests of all citizens, not merely to secure convictions, we see no need to extend the length of this opinion by citation of numerous authorities." 41 Mich App 215, at 219–220; 199 NW2d 845, at 847.

The Court in *People v Nettles, supra,* was unpersuaded by the prosecutor's contention that since the defendant was not precluded from cross-examining the accomplices no prejudice resulted. However, that argument was unavailing since both of these men denied the existence of a "deal" under cross-examination and neither the prosecutor nor the trial court did anything to contradict these denials.

In *People v Love,* 43 Mich App 608; 204 NW2d 714 (1972), an accomplice of the defendant (who was also a co-defendant at trial) gave testimony implicating the defendant. After the completion of the arguments of counsel and before the judge delivered his instructions to the jury, the prosecutor moved to dismiss the case against the accomplice. The motion was granted. The trial judge, however, refused to give a defense-requested instruction to the effect that the case against the accomplice had been dismissed upon motion of the

prosecutor and that her testimony should be weighed very carefully. In reversing the defendant's conviction this Court stated:

"Certainly in a situation where, as here, the accomplice has been granted immunity in order to secure his testimony, it is incumbent upon both the prosecutor and trial judge to make known that fact to the jury. In *Giglio v United States,* 405 US 150, 154–155; 92 S Ct 763, 766; 31 L Ed 2d 104, 109 (1972), the United States Supreme Court reversed Giglio's conviction because of the prosecutor's non-disclosure of a promise not to prosecute. The Court declared:

" 'Here the Government's case depended almost entirely on [the alleged coconspirator's] testimony; without it there could have been no indictment and no evidence to carry the case to the jury. [The coconspirator's] credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility *and the jury was entitled to know of it.'* (Emphasis supplied.)

"See also *People v Nettles,* 41 Mich App 215 [199 NW2d 845] (1972).

"Fundamental due process requires that the prosecutor fully inform the jury of all facts relevant to their determination of the case. Since the credibility of the witnesses is of the utmost importance, and since the granting of immunity to an accomplice creates a situation in which the probability of false swearing is heightened, it is incumbent upon the prosecutor to make known to the jury the fact that immunity or a plea to a reduced charge has been granted to the testifying accomplice. It is therefore axiomatic that the trial court must inform the jury of such fact, if such fact comes to the attention of the court. Further, the trial court, upon a request of counsel, should instruct the jury to carefully consider the weight to be given the accomplice's testimony in light of the various temptations under which such witness may be placed and the motives by which he may be actuated." 43 Mich App 608, at 613–614; 204 NW2d 714, at 717.

In *Giglio v United States,* 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972), the defendant was convicted of passing forged money orders solely on the basis of the testimony of an alleged accomplice who had been promised leniency in return for his testimony against the defendant. No disclosure of this "deal" was made to the trial court, to the defendant, or to the jury. The Supreme Court in reversing defendant's conviction stated:

"Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." 405 US 150, at 154–155; 92 S Ct 763, at 766; 31 L Ed 2d 104, at 109.

We are of the opinion that *People v Nettles, supra, People v Love, supra,* and *Giglio v United States, supra,* are all distinguishable on the facts. In both *Nettles* and *Giglio,* a situation was extant in which a prosecutor failed to correct a witness's denial of a "deal" when in reality such an agreement had been made. This was said to be a denial of due process. We agree. However, such is not the case here. Here no denial of a "deal" was ever made by Mr. Smith. The question of the existence of such an agreement was never put to him on cross-examination.

*People v Love, supra,* also presented this Court with a different situation than does the instant case. In *Love,* the charges against the accomplice were dismissed after the completion of the arguments of counsel. The defendant's attorney specifically requested the trial judge to instruct the jury that the case against the accomplice had been

dismissed and that they (the jury) must weigh the testimony of the accomplice very carefully. These requested instructions were denied. This Court reversed on this ground and we concur in that result. However, in the instant case, although defendant and his attorney were aware of the existence of the grant of immunity from the time of the preliminary examination, no instruction, such as was requested in the *Love* case, was ever asked for by the defendant in this case.

However, defendant apparently urges this Court to hold that the prosecutor has a duty to inform the jury as well as the defendant of a grant of immunity even in a case such as the instant one where defendant, with knowledge of the grant of immunity, does nothing to bring said grant to the attention of the jury. We decline to so hold. This is not a case wherein a defendant was not advised of a grant of immunity to an alleged accomplice. Nor is this a case wherein an accomplice who has been granted immunity falsely denies, on cross-examination, the existence of such a "deal" while the prosecutor does nothing to correct the falsehood. Finally, this is not a case where the trial court refused to give a requested instruction as to the grant of immunity and its concomitant credibility ramifications.

We are unwilling to rule that a prosecutor must in all situations bring the fact that an alleged accomplice has been granted immunity to the attention of the jury. A good reason for our position is the fact that defense counsel may not want this fact brought to the attention of the jury. For example, defense counsel might be of the opinion that disclosure of the grant of immunity would only lead the jury to place more credence in the alleged accomplice's testimony on the theory that

the accomplice no longer has anything to fear from the authorities. On the other hand, defense counsel might be convinced that disclosure will lead the jury to conclude that the alleged accomplice is lying in order to fulfill his end of the "deal". Either conclusion is within the realm of possibility. We view the decision to bring this matter to the attention of the jury as one appropriately left to defense counsel's strategy and accordingly, we decline to require the prosecution to disclose the fact that immunity has been granted to the jury in a case such as the instant one. The prosecution must, of course, always disclose this matter to the defendant and his attorney. The prosecution must also not allow falsehoods to go uncorrected. But where, as here, defense counsel, though fully aware of the grant of immunity, does nothing to bring the matter to the attention of the jury, error cannot be predicated upon the fact that the prosecutor did not so inform the jury.

Finally, defendant contends that the trial court erred in considering his juvenile record in imposing sentence. This contention is unavailing in light of the Michigan Supreme Court's decision in *People v McFarlin,* 389 Mich 557; 208 NW2d 504 (1973). There the Supreme Court expressly held that juvenile records may be considered in imposing sentence.

Affirmed.

All concurred.