PEOPLE v CLARK

1. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—WEAPONS—PROBATIVE
   VALUE.

   A weapon which has probative value may be admissible in
   evidence in a criminal case even though it is conceded that it is
   not the weapon which was used in the commission of the crime
   charged.

2. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—WEAPONS—TIRE IRON
   —PREJUDICE—FAIR TRIAL.

   Admission into evidence in a criminal case of a tire iron conceded
   not to be the weapon used in the commission of the crime
   charged was not prejudicial to the defendant in the case and
   did not deprive him of a fair trial where the evidence in favor
   of a finding of guilt beyond a reasonable doubt was overwhelm-
   ing without consideration of the tire iron.

Appeal from Van Buren, David Anderson, Jr., J.
Submitted June 2, 1975, at Grand Rapids. (Docket
No. 21176.) Decided August 13, 1975. Leave to
appeal denied, 395 Mich —.

Billy Joe Clark was convicted of assault with
intent to do great bodily harm less than murder.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Frank D. Willis,*
Prosecuting Attorney (Prosecuting Attorneys Ap-
pellate Service, *Edward R. Wilson,* Director, and
*Dennis M. Powers,* Special Assistant Attorney
General, of counsel), for the people.

REFERENCE FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 288.

   30 Am Jur 2d, Evidence §§ 1080, 1089, 1091.

[2] 5 Am Jur 2d, Appeal and Error §§ 786, 883.

*McKinley & Jerkins* (by *Roman T. Plaszczak),* for defendant.

Before: McGregor, P. J., and D. E. Holbrook and N. J. Kaufman, JJ.

D. E. Holbrook, J. Defendant was convicted by a jury of assault with intent to do great bodily harm · less than murder, MCLA 750.84; MSA 28.279. He was sentenced to prison for a period of 18 months to 10 years. From his conviction and sentence defendant appeals as of right.

On this appeal, defendant raises four issues, only one of which we need consider.

In support of the charges against the defendant, the prosecutor introduced evidence at trial which tended to show that the defendant arrived at the parking lot adjacent to the place of employment of the complaining witness shortly before 7 a.m. on the day in question. It further tended to show that the defendant approached the complaining witness and struck him in the face with a tire iron without provocation and without any blows being struck by the complaining witness. Defendant admitted being at the parking lot on the day in question, and admitted striking the complaining witness but defendant, his brother and his brother's friend all testified that the complaining witness had struck the first blow. They further testified that defendant never struck the complaining witness with a tire iron, but only with his bare fist, and that he never had a tire iron in his hand during the incident in question. During the course of the trial, the prosecutor sought to introduce into evidence a tire iron which was admittedly not the tire iron alleged to have been used during the assault. The prosecutor stated that he wished to enter the tire iron into evidence as a similar and accurate fac-

simile of the one allegedly used in the assault. Defense counsel objected, after establishing that the witness who was testifying at the time could not identify the tire iron present in the courtroom as reasonably similar to the one allegedly used in the assault. At that time the trial judge sustained the objection. Defense counsel then went on to use the proposed exhibit in his own cross-examination of witnesses. He asked one prosecution witness:

"*Q.* Now, referring to people's proposed exhibit number 6, was this object that Mr. Clark—you say Mr. Clark had in his hand, longer or shorter than that?

"*A.* I'd say it's about the same size.

"*Q.* Lengthwise; is that correct?

"*A.* Yes.

"*Q.* But you are absolutely positive that it was bigger around than that?

"*A.* Yes."

Later he asked the same witness:

"*Q.* Okay. Now, referring to this object that you saw, was it curved as similar to people's proposed exhibit number 6, or was it straight?

"*A.* It was straight."

Later, in questioning another witness the following occurred:

"*Q.* If this person who struck Mr. Harmon had what has been marked people's proposed—or, an object as large as people's proposed exhibit number 6 in his hand, do you think you could have seen it?

\* \* \*

"*Q.* Do you understand my question, Mrs. Tisdale?

"*A.* Umm-hmm.

"*Q.* If this person who you saw hit Mr. Harmon had

an object as large as this in his hand, would you have seen it?

"*A.* Well, probably if it's that color. It might not have been that color. But where I was at, where I stood, I wouldn't have seen it. It was just so quick. And I couldn't have seen it no way."

After defense counsel had thus used the proposed exhibit for his own purposes, the prosecution again offered it into evidence as an exhibit. At this point, the prosecution had just elicited testimony from a witness who claimed that the tire iron offered into evidence was identical with the tire iron he claimed to have observed the defendant use during the assault. Defense counsel again objected to the admitting of the tire iron into evidence. The basis of his objection was clearly that prior witnesses were unable to say that the tire iron offered into evidence and the tire iron allegedly used by defendant were identical:

"I object, your Honor. I think the testimony here as to what was used is completely different than this one here. The testimony of Mr. Harmon as to the condition of this and the condition of the one that he saw was different. That is my recollection, and, therefore, I object."

At that time the court admitted the exhibit.

Defense counsel again made use of the exhibit when he had one of the witnesses leave the stand and demonstrate the manner in which the witness claimed to have seen defendant manipulate the tire iron. During his closing argument, defense counsel made the argument that, if the witness had really been as far away as he claimed to have been from the incident, and if the defendant had really been holding the tire iron in the manner

demonstrated, that the witness would never have been able to tell that it was a tire iron.

Defendant now urges on this appeal that it was reversible error to allow the tire iron into evidence. Defendant cites no authority for his position, but claims that to allow the prosecution to enter the tire iron into evidence in this case is analogous to allowing the prosecution to enter a reasonable facsimile of a weapon into evidence in a trial for armed robbery. We do not believe defendant's proposed analogy to be sound, but even if it were, the admission of a "similar" weapon in an armed robbery trial is not necessarily reversible error. *People v Howard,* 391 Mich 597; 218 NW2d 20 (1974). We also point out that a weapon is not necessarily inadmissible because it is conceded that it is not the weapon which was used in the crime charged. Such a weapon may be admissible if it has some probative weight. *People v Miner,* 22 Mich App 673; 177 NW2d 719 (1970). In view of defendant's own extensive use of the tire iron at trial, even before it was finally admitted as an exhibit, it would seem that it is now a little late for defendant to argue that the tire iron had no probative value.

In view of these facts, we are inclined to hold that the admission of the tire iron into evidence was not error. However, we find it unnecessary to do so. Even if it were error, we hold that it was not prejudicial; it did not deprive defendant of a fair trial. Without considering the tire iron, the evidence in the case in favor of a finding of guilty was overwhelming.

We have examined defendant's other allegations of error and find them to be without merit.

Affirmed.