PEOPLE v HENCE

Docket No. 52070. Submitted June 12, 1981, at Detroit.—Decided October 6, 1981.

Henry Hence, Jr., was convicted of first-degree murder and conspiracy to commit first-degree murder, Wayne Circuit Court, Victor J. Baum, J. He appeals. *Held:*

1. The trial court did not abuse its discretion in admitting certain physical evidence or in determining that the probative value of the evidence outweighed its prejudicial effect.

2. The record reveals that the inventory search which led to the discovery of the physical evidence was valid.

3. The trial court properly admitted a reproduction of certain evidence, any harmful effect being vitiated by the court's cautionary instruction.

4. The trial court properly allowed an unindorsed accomplice witness to testify. At the time of the trial, the rule of law that the prosecutor must indorse an accomplice witness whom he believes he will call had not been annunciated.

5. The record does not support the defendant's allegations

REFERENCES FOR POINTS IN HEADNOTES

[1] 30 Am Jur 2d, Evidence §§ 774, 1104.

[2] 29 Am Jur 2d, Evidence § 408.

[3] 68 Am Jur 2d, Searches and Seizures § 106.

[4] 29 Am Jur 2d, Evidence §§ 292, 293, 451.

[5] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.
  63 Am Jur 2d, Prosecuting Attorneys §§ 26, 27.
  81 Am Jur 2d, Witnesses § 2.

[6] 41 Am Jur 2d, Indictments and Informations §§ 5, 60.

[7] 21 Am Jur 2d, Criminal Law § 166.
  63 Am Jur 2d, Prosecuting Attorneys § 27.

[8] 47 Am Jur 2d, Jury § 235.
  Use of peremptory challenge to exclude from jury persons belonging to race or class. 79 ALR3d 14.

[9] 40 Am Jur 2d, Homicide §§ 530, 535.
  75 Am Jur 2d, Trial §§ 876-882.

[10] 58 Am Jur 2d, New Trial §§ 29-31.

[11] 75 Am Jur 2d, Trial § 212.

[12] 63 Am Jur 2d, Prosecuting Attorneys § 27.

[13] 29 Am Jur 2d, Evidence §§ 250, 269.
  63 Am Jur 2d, Prosecuting Attorneys § 27.

that the prosecutor systematically excluded blacks from the jury by use of peremptory challenges.

6. The trial court properly instructed the jury on the lesser-included offense of second-degree murder.

7. The trial court did not abuse its discretion in denying the defendant's motion for a new trial.

8. The trial court did not err in failing, *sua sponte,* to exclude evidence offered by the prosecutor in rebuttal to the defendant's alibi defense. Although the prosecutor failed to file and serve notice of rebuttal upon the defendant, the defendant failed to raise an objection during trial or in his motion for a new trial, thereby waiving the issue on appeal.

Affirmed.

1. EVIDENCE — PHYSICAL EVIDENCE — RULES OF EVIDENCE.

A proper foundation which is sufficient to identify a physical article and to show its connection with a crime or an accused must be laid to justify the admission of the item into evidence in a criminal case; however, the identification need not be positive, and a similar article may be admitted even where it is conceded that it is not the article used in the commission of the crime, and objections to sufficiency go to the weight to be given to the evidence rather than the admissibility of the article where its probative value outweighs its prejudicial effect (MRE 403).

2. APPEAL — CRIMINAL LAW — SUPPRESSION OF EVIDENCE.

A trial court's determination relative to the suppression of evidence obtained through an allegedly illegal search and seizure will not be overturned on appeal unless clearly erroneous.

3. SEARCHES AND SEIZURES — INVENTORY SEARCHES.

The opening of a closed container obtained by police during a routine inventory search is proper where done to protect the property while in police custody, to protect the police against claims for lost or stolen property, or to protect the police from potential danger.

4. EVIDENCE — SUPPRESSION OF EVIDENCE — DUE PROCESS — REPRO-DUCTION OF EVIDENCE.

Suppression of evidence favorable to an accused by a prosecutor constitutes a violation of the accused's right to due process where the evidence is material either to guilt or to punishment irrespective of the prosecutor's good faith; however, where the prosecutor is unable to produce evidence because the accused

intentionally destroyed the evidence without the knowledge of any officer of the court, a trial court properly may admit a reproduction of the evidence, accompanied by a cautionary instruction that any doubt relative to the exhibit is to be resolved against the prosecution.

5. PROSECUTING ATTORNEYS — INDORSEMENT OF RES GESTAE WITNESSES — ACCOMPLICES.

A prosecutor, at the time of filing an information, must indorse all res gestae witnesses whose identities are known to him and must produce those witnesses during trial; however, he is not required to indorse a defendant's accomplice nor call him as a witness during trial (MCL 767.40; MSA 28.980).

6. PROSECUTING ATTORNEYS — INDORSEMENT OF ACCOMPLICE WITNESSES.

A prosecutor, prospective from June 3, 1981, who believes that he might call an accomplice as a witness must indorse the accomplice as he would any other res gestae witness, designating on the information that he believes the witness to be an accomplice, and, should the prosecutor subsequently decide not to call the accomplice, he must move to strike the accomplice's name from the information.

7. WITNESSES — CRIMINAL LAW — ACCOMPLICES.

A defendant is not denied a fair trial where the prosecution agrees to confer special favors on an accomplice witness in return for testimony, even where the promise may be legally impossible to perform, where the details of the entire "deal" are fully revealed to the jury so that it properly may evaluate the witness's credibility.

8. CRIMINAL LAW — JURY SELECTION — PEREMPTORY CHALLENGES — DUE PROCESS — IMPARTIAL JURIES.

Use of a peremptory challenge is absolute and precludes inquiry into the motives or mental attitudes of the party exercising the challenge, and, where the result of the use of peremptory challenges by a prosecutor is to remove blacks from a jury, the use does not constitute a violation of a defendant's right to due process and to trial by an impartial jury.

9. HOMICIDE — JURY INSTRUCTIONS — LESSER-INCLUDED OFFENSES.

A trial court, in a prosecution for first-degree murder, must instruct the jury, *sua sponte,* on the lesser-included offense of second-degree murder.

10. NEW TRIAL — CRIMINAL LAW — GUILTY VERDICTS — APPEAL —
    COURT RULES — STATUTES.

    A trial court may grant a criminal defendant a new trial on the
    grounds designated by court rule or where it finds a guilty
    verdict not to be in accordance with the evidence and that an
    injustice has been done, and its decision will not be disturbed
    on appeal absent a showing of an abuse of discretion (GCR
    1963, 527; MCL 770.1; MSA 28.1098).

11. TRIAL — CLOSING ARGUMENTS — TIME ALLOTMENTS — COURT
    RULES.

    A trial court may limit the time allowed for closing argument
    provided the time for argument is adequate with due regard for
    the complexity of the case (GCR 1963, 507.7).

12. CRIMINAL LAW — ALIBI DEFENSE — NOTICE OF REBUTTAL —
    EXCLUSION OF EVIDENCE — STATUTES.

    A trial court must exclude evidence offered by a prosecutor in
    rebuttal to an alibi defense where the prosecutor fails to file
    and serve the statutory notice of rebuttal upon the defendant
    (MCL 768.20[2], 768.21[2]; MSA 28.1043[2], 28.1044[2]).

13. CRIMINAL LAW — APPEAL — ALIBI DEFENSE — NOTICE OF REBUT-
    TAL — PRESERVING QUESTION — STATUTES.

    A claim of error, predicated on a trial court's failure to exclude
    rebuttal evidence to an alibi defense where the prosecutor
    failed to file and serve notice of rebuttal upon a defendant, is
    waived on appeal where the defendant failed to object to the
    prosecutor's failure during trial or in his motion for a new trial
    (MCL 768.20[2], 768.21[2]; MSA 28.1043[2], 28.1044[2]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Walter S. Schwartz (Martin B. Alvin,* of counsel), for defendant on appeal.

Before: D. C. RILEY, P.J., and CYNAR and H. R. GAGE,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

D. C. RILEY, P.J. On November 28, 1978, defendant was charged, along with codefendant, Raymond Gallagher, with first-degree murder, MCL 750.316; MSA 28.548, and conspiracy to commit first-degree murder, MCL 750.157a; MSA 28.354(1). Also named is coconspirators, but not codefendants, were Phillip Edmonds and Norman Robinson. Following a lengthy joint jury trial, both defendants were convicted as charged. On November 29, 1979, defendant Hence was sentenced to concurrent terms of life imprisonment on each count. Defendant appeals as of right, raising seven claims of error which we shall consider *seriatim.* Codefendant Gallagher is not involved in this appeal.

This case arose from the fatal shooting of Leon Sommers on May 11, 1978, at his home in Taylor, Michigan. The victim was found lying on a couch in the living room of his home, shot through the head four times at close range, apparently with his own gun.

The transcript reveals that witnesses testified that the victim allegedly was involved in stolen auto parts and/or drug trafficking in the downriver Detroit area. Most of the trial witnesses were also involved in these illegal activities, as was codefendant Gallagher.

Five weeks prior to the victim's death, codefendant Gallagher was convicted of interstate transportation of a stolen motor vehicle in an Ohio federal district court, based largely on the testimony of the victim. The prosecution's theory in the instant case was that between April 18, 1978, and May 13, 1978, (*i.e.,* postconviction and presentencing on his federal conviction), Gallagher, outraged by the victim's testimony against him, hired Phillip Edmonds, who in turn hired Norman Rob-

inson and defendant Hence, the "hit-men", to kill the witness-victim. Hence denied knowing Gallagher and denied any knowledge of a conspiracy to kill the victim. Hence also presented an alibi defense, asserting he was home with his wife and a friend at the time of the shooting. The police eventually were led to Robinson by virtue of Robinson's fingerprint left on the adhesive tape which bound the hands of the victim. Robinson's statements, in turn, apparently led the police to Hence and Edmonds. Edmonds' statements apparently led to Gallagher.

The victim's wife testified that she returned home from work at 5:30 p.m. on May 11, 1978, and found her husband dead. Horrified, she called the police from the home of her next-door neighbor. After the body had been removed, she returned to her home where she found that their bedroom had been ransacked and that, among other things, the victim's digital watch was missing. A gun which her husband owned and had kept under the mattress in the bedroom was also missing. (The police had found the gun on the couch. Ballistics confirmed later that it was the murder weapon.)

Due to the extremely complicated nature of this case and the voluminous evidence produced at trial, further significant facts will be noted only as they relate to the issues raised on appeal.

I

A Georgia State Trooper testified that on August 10, 1978, he was on routine patrol on an interstate highway near Atlanta, Georgia, when he observed a Thunderbird automobile with improper license tags. Having run a check on the license plate number to determine registration, he stopped the vehicle and, believing Hence to be the person

named on the driver's license presented, placed him in the police vehicle for the purpose of charging him with using fraudulent tags. The trooper then returned to the Thunderbird, talked to Hence's passenger (an apparent hitchhiker), noted a briefcase in the passenger's compartment, and returned to the police vehicle to call for a wrecker to impound the Thunderbird. Hence then informed the trooper that the car was not stolen and urged him to check the trunk. Upon doing so, the trooper found three automobile license plates, one from Alabama and two from Michigan. At that time, he turned and saw Hence escaping from the police car.

Hence was apprehended and arrested a short time later. The trooper ran the numbers on the Michigan plates found in the trunk of the Thunderbird on the LEIN System and ascertained that the party on the driver's license (which had borne a false name) was really Hence and that Hence was wanted by the authorities in Taylor, Michigan. The Thunderbird apparently had been leased to Hence by a firm in Michigan.

The trooper at the scene then made an inventory search of the trunk and the passenger compartment of the car and the briefcase which was not locked. He came upon birth certificates, driver's licenses, social security cards, and proof of insurance receipts, all of which were fraudulent. He also found two pistols, a black Beretta, and a .38-caliber revolver. In addition, he found a digital watch. The trooper further testified that it was standard procedure to inventory items in this manner before releasing the vehicle to the private towing company.

The first issue concerns the admissibility of the .38-caliber revolver found in the briefcase. It was

the people's theory that this was the weapon Edmonds and Robinson testified Hence had shown them at the conspiratorial meeting in late April of 1978 and was also the weapon that defendant Hence took to the victim's house the morning defendant Hence shot and killed the victim, using the victim's gun rather than the .38-caliber revolver. Edmonds testified during trial that at the meeting in late April of 1978 defendant Hence had carried a suitcase which contained a .38-caliber blue steel revolver.

After holding an evidentiary hearing, the court ruled that the search was a legal inventory search and denied the motion to suppress the evidence. As such, the gun was admitted as an exhibit, and Robinson later testified that it did look similar to the gun Hence had in his briefcase at the April, 1978, meeting and was similar to the weapon Hence took with him the morning of the shooting.

Defendant attacks the trial court's decision to admit the weapon on three grounds. First, he claims that the gun was not sufficiently identified to justify admission.

The appropriate rule to be followed in determining whether a physical item should be admitted as evidence was stated in *People v Burrell,* 21 Mich App 451, 456-457; 175 NW2d 513 (1970), quoting 22A CJS, Criminal Law, § 709, pp 949-951:

" 'To justify the admission, a proper foundation must be laid, and such articles must be identified as the articles they are purported to be, and shown to be connected with the crime or with the accused; however, such identification is not required to be positive, absolute, certain, or wholly unqualified, and where there is some evidence for this purpose, objections to its sufficiency go to the weight rather than the admissibility of the articles in question.' "

In short, there must be sufficient evidence of (1) the exhibit's identity and (2) its connection to the crime to support its admission at trial. *People v Kemp,* 99 Mich App 485, 489; 298 NW2d 1 (1980), *People v Kremko,* 52 Mich App 565, 573; 218 NW2d 112 (1974). A witness is not required to positively identify the weapon as being the weapon used in the crime, *People v Howard,* 391 Mich 597; 218 NW2d 20 (1974), and it is not error requiring reversal to admit a "similar" weapon. *People v Clark,* 63 Mich App 334; 234 NW2d 511 (1975). Further, a weapon is not necessarily inadmissible where it is conceded, as in this case, that it is not the weapon which was used in the crime charged. *People v Kramer,* 103 Mich App 747; 303 NW2d 880 (1981), *Clark, supra.* This Court will not reverse the trial court's conclusion that there is sufficient identification absent an abuse of discretion. *Kramer, supra.*

Applying these principles, we cannot say that the trial court abused its discretion in admitting the gun. Robinson's testimony, coupled with that of Edmonds, established that the weapon was similar to the weapon he saw in Hence's possession. In addition, we likewise are unprepared to hold that the judge abused his discretion in finding that the probative value of admitting the weapon outweighed its prejudicial effect. MRE 403, *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973).

Defendant also contends that the search and seizure made by the Georgia trooper was unconstitutional and that the court erred in not suppressing the weapon.

A trial court's ruling at a suppression hearing will not be overturned unless that ruling is found

to be clearly erroneous. *People v Erskin,* 92 Mich App 630, 642; 285 NW2d 396 (1979), *People v Young,* 89 Mich App 753; 282 NW2d 211 (1979). In *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), the Supreme Court upheld the use of routine inventory searches designed to protect the police and a defendant from claims of personal injury, lost or stolen property or where the search was not intended to conceal other investigatory motives. In *People v Merchant,* 86 Mich App 355, 361; 272 NW2d 656 (1978), this Court noted that *Opperman* "clearly allows the opening of closed containers taken into custody by the police under standard police procedures".

The facts of the instant case reveal a proper inventory search, well within the guidelines of *Opperman* and those Michigan cases construing *Opperman.* See *People v Siegel,* 95 Mich App 594; 291 NW2d 134 (1980), *Merchant, supra, People v Boutell,* 80 Mich App 216; 263 NW2d 36 (1977). Clearly, the initial stop was proper and there is no claim of an illegal arrest. Subsequent to Hence's reapprehension, the trooper received information that defendant was wanted on a homicide warrant in Michigan. It would have been irresponsible for the trooper to have left the car on a freeway or to have entrusted it to the hitchhiker. Under all the circumstances, it was reasonable to impound the car after having inventoried the items in the car in accordance with his department's standard procedure. These facts reveal that the search was not intended to conceal other investigatory motives and as such was valid. *People v Roberson,* 80 Mich App 241; 263 NW2d 42 (1977).

Finally, defendant contends that the weapon was inadmissible under MRE 404(b). The people did not offer the arrest and subsequent seizure of

the gun on a "similar act" theory. Defendant's contention is without merit.

## II

During trial, the prosecutor contended that the digital watch, found in the briefcase at the time of defendant's arrest, was the victim's watch, taken from the victim on the day he was killed. Defendant's contention was that he had purchased the watch at a store in Detroit. To substantiate his claim, the defendant produced, among other things, a sales tag. The tag subsequently was lost. On appeal, defendant contends that the loss of this exhibit warrants a new trial.

During closing argument, it was discovered that the sales tag was missing. Having discussed the alternatives, the parties decided to make a reproduction of the exhibit although Hence himself objected to such a procedure. When the jury specifically asked for the exhibit, the substitute was passed to them along with a cautionary instruction. The following day the jury was instructed further that if there was any doubt in their minds as to what was written on the exhibit, as to the appearance of the exhibit, and as to what the exhibit consisted of it was to resolve any of those doubts against the people.

Following the trial, an evidentiary hearing was held on the issue of the missing tag. Codefendant Gallagher testified that defendant's attorney had brought the tag to the lockup to discuss it with defendant and that as he was leaving the tag inadvertently fell to the floor. Hence put his foot over the exhibit and his attorney left. According to Gallagher, Hence then stated that the tag was "bogue" and flushed it down the toilet.

At the end of the hearing, the trial judge concluded that he was convinced, beyond a reasonable doubt, that Hence did destroy the exhibit as Gallagher had stated.

In *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the Court detailed the constitutional impact of evidence lost through actions of the police or prosecutor. The *Brady* Court focused on the harm caused by the suppression of evidence rather than on the intent which caused the loss of evidence and held that suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good or bad faith of the prosecution. See Anno: *Withholding or suppression of evidence by prosecution in criminal case as vitiating conviction,* 34 ALR3d 16, 68-71.

Although the principles enunciated in *Brady* are instructive, our review of the record convinces us that the sales slip was not lost through the actions of the police or prosecutor and that defendant's request for a new trial on this ground is without merit.

First, it appears that defense counsel was the custodian of this particular exhibit at the time it was lost. The prosecutor denied ever having possession of the exhibit and denied that he had any part in the loss of the exhibit. Second, following the evidentiary hearing, the court concluded that the defendant intentionally, without the knowledge of any officer of the court, destroyed his own defense exhibit and that the prosecutor did not have sole possession of the exhibit in question. We cannot say that these findings were clearly erroneous. GCR 1963, 517.1. Finally, the trial court's reproduction of the exhibit, testimony of the court

reporter in front of the jury recounting his recollection of the exhibit, and the cautionary instruction accompanying the submission of the reproduction to the jury vitiated any harmful effect the loss of the exhibit spawned.

### III

Defendant next contends that Norman Robinson should not have been allowed to testify during trial and that, since he was, a new trial is necessary.

Robinson was a crucial prosecution witness, the substance of his testimony being that he and defendant Hence performed the "hit" on the victim. Prior to the instant trial, he was convicted of second-degree murder for his part in the killing. The jury was informed of this fact and was also informed that Robinson was testifying against Hence in exchange for a prosecutorial promise to intercede in Robinson's behalf in an effort to get Robinson's sentence reduced.

Robinson was listed on the Hence-Gallagher information as a coconspirator but was not indorsed as a witness. Defense counsel for both Hence and Gallagher had pretrial discovery of Robinson's statements, however, and were aware of the people's theory of Robinson's part in the killing. The prosecutor and trial counsel were under the impression that Robinson would not testify, Robinson apparently asserting his Fifth Amendment rights. During the trial, however, Robinson changed his mind and decided to testify.

On appeal, defendant raises two objections to the court's decision to allow Robinson to testify. First, he contends that the surprise of Robinson's testimony denied him a fair trial. Second, he

claims that the prosecutorial promise made to Robinson was illegal and that, as a result, a new trial is necessary.

The real objection, in the instant case, appears to be to the trial court's ruling, which, in effect, was the late indorsement of an accomplice as a witness on the information.

MCL 767.40; MSA 28.980 requires a prosecutor to indorse on the information and produce during trial all res gestae witnesses whose identities are known by the prosecutor at the time the information is filed. *People v Castelli,* 370 Mich 147; 121 NW2d 438 (1963). An exception to this rule is that the prosecutor is not required to indorse or call as a witness any accomplice of the defendant. *People v Phillips,* 61 Mich App 138; 232 NW2d 333 (1975), *People v Szymanski,* 52 Mich App 605; 218 NW2d 95 (1974).

In *People v Thomas,* 49 Mich App 682; 212 NW2d 728 (1973), this Court rejected a defense claim that the trial judge had erred in granting a prosecution motion to indorse an alleged accomplice after the jury had been impanelled. The Court concluded that since the prosecutor was not required to indorse an accomplice of the defendant, "error cannot be predicated upon his late, albeit unnecessary, motion to do so". *Id.,* 686-687.

The identical issue also was addressed by this Court in *People v Lytal,* 96 Mich App 140, 161-162; 292 NW2d 498 (1980), where the Court held:

"Though the better rule would have the prosecutor indorse all witnesses that he anticipates calling at trial, with the understanding that he need not call any indorsed accomplices, *People v Potts* [55 Mich App 622; 223 NW2d 96 (1974)], *People v Resh* [107 Mich 251; 65 NW 99 (1895)], we find the rationale used by this Court in *People v Thomas, supra,* to be applicable here; since

the prosecutor has no obligation to indorse, produce or call an accomplice witness, his decision to do so at trial cannot be deemed improper.

"We might be inclined to rule differently had defendant claimed surprise and asked for an adjournment, claiming he had not had time to prepare for trial. *People v Koukol,* 262 Mich 529, 530; 247 NW 738; 87 ALR 878 (1933), *People v Wilson,* 397 Mich 76; 243 NW2d 257 (1976), *reh den* 397 Mich 962 (1976). Defendant did not ask for time to interview the witnesses, nor did he ask for a continuance as was required in *People v Koukol, supra.* Therefore, we conclude that the trial court did not err in permitting the defendant's accomplices to testify in the prosecution's case in chief, notwithstanding that they were unindorsed witnesses. *People v Southern,* 306 Mich 324, 327; 10 NW2d 901 (1943). 'The failure to move for a continuance is strongly indicative of a lack of prejudice.' *People v Martin,* 44 Mich App 254, 257; 205 NW2d 96 (1972)."

The record reflects that no error requiring reversal occurred in the instant case due to "surprise". The trial court allowed defense counsel the opportunity to interview the witness prior to his taking the stand. Further, Robinson was cross-examined very thoroughly by not only Hence's counsel, but also by Gallagher's counsel. The record further indicates that Robinson's actual testimony came as no great surprise to defense counsel due to the fact that counsel knew the people's theory as to the part Robinson allegedly played in the killing. Finally, the trial court gave defense counsel the opportunity to recall any witnesses they so desired.[1]

---

[1] More recently, a panel of this Court held in *People v Gawthrop,* 106 Mich App 722, 727-728; 308 NW2d 621 (1981), T. M. BURNS, J. *(dissenting),* that *Lytal* and *Thomas* were wrongly decided holding:

"We recognize that a prosecutor need not indorse any accomplice witness he does not anticipate calling. If, however, a prosecutor believes he might call an acomplice witness, we hold that he must indorse that accomplice, as he would any other res gestae witness.

We also find no merit to defendant's claim that he was denied a fair trial because the promise made to Robinson is illegal. Although the promise made by the people to Robinson may be legally impossible to perform, the only requirement the case law imposes is that the entire deal be placed in front of the jury so that they properly may determine the credibility of the witnesses. *People v Atkins,* 397 Mich 163; 243 NW2d 292 (1976), *People v Stewart,* 61 Mich App 167; 232 NW2d 347 (1975), *People v Nettles,* 41 Mich App 215; 199 NW2d 845 (1972). Here, that requirement was fulfilled, thus protecting defendant's right to a fair trial.

## IV

Defendant's next assignment of error is that the prosecution used its peremptory challenges during jury selection systematically to exclude blacks resulting in a denial of due process.

We reject defendant's contention. The leading case in this area is *Swain v Alabama,* 380 US 202; 85 S Ct 824; 13 L Ed 2d 759 (1965). In *Swain,* the Supreme Court held that a prosecutor's use of the peremptory challenge in a single case to remove blacks from the jury was not a violation of the constitution. All of the courts which have consid-

---

The prosecutor should designate in the information that he believes the witness is an accomplice. Should the prosecutor not wish to call that witness, he must move to strike that witness's name from the information.

"This rule provides a defendant with notice that the prosecution plans to call an accomplice. It also leaves intact the general accomplice exception, which was formulated to protect a prosecutor from calling accomplice witnesses who would be likely to perjure themselves for defendant's benefit. *People v Raider* [256 Mich 131; 239 NW 387 (1931)]. This new rule should be applied prospectively."

Since *Gawthrop* applies prospectively only, it is inapplicable to the instant case.

ered this question have reached the same conclusion. See Anno: *Use of peremptory challenge to exclude from jury persons belonging to class or race,* 79 ALR3d 14, *People v Roxborough,* 307 Mich 575; 12 NW2d 466 (1943), *People v Ryckman,* 307 Mich 631; 12 NW2d 487 (1943), *People v Redwine,* 50 Mich App 593; 213 NW2d 841 (1973). When called upon to decide the question other courts have generally "adhered literally to the traditional concept of the nature of a peremptory challenge as absolute, and as precluding inquiry into the motives or mental attitudes of the one to whom the right is given". Anno: *Use of peremptory challenge to exclude from jury persons belonging to race or class,* 4 ALR2d 1200.

In addition, this record does not support the allegation that the prosecutor systematically was excluding blacks from the jury by use of his peremptory challenges. It would appear that some blacks remained on the jury. In addition, although not required to, the prosecutor did articulate his reason for peremptorily removing one black.

## V

Defendant's fifth contention, that the court erred in instructing the jury on second-degree murder, is without merit. In *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975), the Court held that as to every first-degree murder case tried after January 1, 1976, the trial court is required to instruct the jury, *sua sponte,* even over defense objection, upon the lesser-included offense of second-degree murder. Thus, in the instant case, there was no error committed by the trial court in giving a second-degree murder instruction. Further, since defendant was not found guilty of

second-degree murder or conspiracy to commit second-degree murder but was convicted instead of first-degree murder and conspiracy to commit first-degree murder, no harm has occurred by the giving of the lesser-included charges. *People v Turner,* 99 Mich App 733, 740; 298 NW2d 848 (1980).

VI

Defendant also contends that the trial court abused its discretion in denying his motion for a new trial.

GCR 1963, 527 sets forth a variety of grounds upon which a trial judge may grant a new trial. In addition, MCL 770.1; MSA 28.1098 provides:

"The court in which the trial of any indictment shall be had may grant a new trial to the defendant, for any cause for which by law a new trial may be granted, or when it shall appear to the court that justice has not been done, and on such terms or conditions as the court shall direct."

Under this statute, a new trial may be granted if the trial judge finds that the guilty verdict was not in accordance with the evidence produced and that an injustice has been done. *People v Rayford Johnson,* 391 Mich 834; 218 NW2d 378 (1974). The decision whether to grant or deny a motion for a new trial is entrusted to the discretion of the trial court and that decision will not be disturbed on appeal absent a showing of an abuse of discretion. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), *People v Andrews,* 360 Mich 572; 104 NW2d 199 (1960).

We have reviewed the reasons proferred by defendant in support of his motion for a new trial

and conclude that the court did not abuse its discretion in denying the motion.

The claim that several of the prosecution witnesses were inherently incredible is without merit. While the credibility of the witnesses was certainly at issue, this is different from saying they were inherently incredible. In addition, appellate counsel has provided no record support for this claim, relying instead upon bald assertions.

There is also no merit to the claim that the 1-1/2 hour time limit placed on closing arguments requires a new trial. GCR 1963, 507.7 provides trial judges with discretionary authority to place time limits on closing arguments. See, also, *People v Green*, 34 Mich App 149; 190 NW2d 686 (1971), *People v Pomranky*, 62 Mich App 304; 233 NW2d 263 (1975).

Although the complexity, length, and gravity of the charges in the instant case are all factors militating in favor of permitting a greater quantity of time for closing arguments, we cannot say the judge abused his discretion in this case. The closing arguments were effective, thorough and analyzed fully all of the applicable issues.

Finally, there is no merit to the claim that the alleged prosecutorial and police misconduct warrants a new trial. The trial judge conducted lengthy hearings on this issue and concluded that none of the allegations warranted dismissal or a new trial. We cannot say that these findings are clearly erroneous. GCR 1963, 517.1.

VII

Defendant raised an alibi defense during trial and gave the statutorily required notice of alibi. MCL 768.20(1); MSA 28.1043(1). Defendant's alibi

witness testified that he was with the defendant and defendant's wife off and on during the entire day of May 11, 1978. Defendant took the stand and testified similarly. On cross-examination, the prosecutor specifically asked defendant whether he went to work that day. Hence denied that he was at work that afternoon and reasserted that he was with his friend all day.

After the defense rested, the prosecutor called as a rebuttal witness the record keeper of the Chrysler Corporation plant where defendant worked. The witness produced a time card belonging to defendant which showed that on May 11, 1978, the card had been punched in at 3:25 p.m. and punched out at 12:04 a.m.

The record reflects that the prosecutor had not given notice to defendant of all proposed alibi rebuttal witnesses prior to trial as required by MCL 768.20(2); MSA 28.1043(2). When the prosecutor called the Chrysler record keeper, however, defense counsel for defendant did not object. On appeal, defendant asserts that the trial court erred by allowing the rebuttal alibi witness to testify.

MCL 768.21(2); MSA 28.1044(2) requires that, if the prosecuting attorney fails to file and serve a notice of rebuttal upon the defendant as required by MCL 768.20(2); MSA 28.1043(2), the court shall exclude the evidence offered by the prosecution in rebuttal.

Although the aforementioned statutes are mandatory in both requiring the prosecutor to file the notice of rebuttal and requiring the court to exclude the testimony if the notice requirement is not complied with, *People v Terry Alexander,* 82 Mich App 621; 267 NW2d 466 (1978), the question remains as to whether the defendant's failure to object during trial and the failure to raise the

issue in the motion for a new trial waives any claim of error in spite of the mandatory language.

We conclude that defendant's failure to object has waived any claimed error. Had a timely objection been interposed, the mandatory language of MCL 768.21(2); MSA 28.1044(2) would have *required* that the judge exclude the proffered testimony since the statute leaves no room for discretion. In light of this failure to interpose an objection, however, we are unwilling to cast the burden on the trial judge to exclude the testimony *sua sponte.*

While this precise question appears to be a matter of first impression, it is clear that the prosecution can waive the statutorily required notice required of a defendant by failure to object. *People v Miller,* 250 Mich 72; 229 NW 475 (1930), *People v Luckett,* 52 Mich App 33; 216 NW2d 460 (1974). Conversely, we see no reason why the defendant should not be deemed to have waived the notice requirement by failing to object. While numerous cases from this Court have construed MCL 768.21(2); MSA 28.1044(2) and have ruled that the language therein is mandatory, a common thread in each of the cases is that the defense counsel objected to the lack of notice. *People v Diaz,* 98 Mich App 675, 680; 296 NW2d 337 (1980), *People v Coulter,* 94 Mich App 531, 534; 288 NW2d 448 (1980), *People v Wilson,* 90 Mich App 317, 319; 282 NW2d 2 (1979), *People v Fisher,* 87 Mich App 350, 354; 274 NW2d 788 (1978), *Terry Alexander, supra,* 626. The failure to object in the instant case distinguishes this case from those cited above.

Affirmed.