# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DELBERT ALLAN PEDERSEN,

        Defendant-Appellant.

UNPUBLISHED
May 21, 2015

No. 320132
Van Buren Circuit Court
LC No. 13-018967-FH

Before: DONOFRIO, P.J., and O'CONNELL and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Delbert Allan Pedersen, appeals as of right his convictions and sentences for accosting a child for an immoral purpose, MCL 750.145a, and aggravated indecent exposure, MCL 750.335a(2)(b). The trial court sentenced Pedersen to serve terms of 12 months in jail for accosting a child and 90 days in jail for indecent exposure. We affirm.

## I. FACTS

According to the victim, Pedersen is his uncle. He and Pedersen would fish in a lake by Pedersen's house by setting up fishing poles on a pier and then returning to Pedersen's vehicle to watch the poles. In 2012, when the victim was 14, he and Pederson went fishing. The victim testified that Pedersen asked him whether he wanted to join him in masturbating and that he told Pedersen "no." At one point, he looked over and saw Pedersen masturbating. He also heard moaning or deep breaths while he was looking out the window.

The victim testified that another incident occurred at a boat launch. There was a storm so he and Pedersen decided to wait in Pedersen's vehicle. The victim testified that Pedersen pulled his pants down to his knees and starting masturbating. Pedersen asked whether the victim wanted to help him or masturbate with him, and the victim told Pedersen "no."

The victim did not report the incidents to police until June 2013. He testified that he reported the incidents because Pedersen went fishing with his younger sisters earlier in the day and he wanted to protect his sisters. According to police officer Travis Bernatche, after interviewing the victim, he drove to Pedersen's house and interviewed him. Officer Bernatche recorded the interview, and the recording was admitted at trial. During the interview, Pedersen claimed that the victim suggested they masturbate while fishing, that he showed the victim how to masturbate, and that he knew it was wrong.

-1-

## II. JURY SELECTION

First, Pedersen contends that the trial court's failures to relieve certain jurors for cause denied him a fair trial. We disagree.

A criminal defendant has a constitutional right to trial by an impartial jury. US Const, AM VI; Const 1963, art 1, § 20. Generally, this Court reviews for an abuse of discretion the trial court's decision to grant or deny an attorney's request to excuse a juror for cause. *People v Legrone*, 205 Mich App 77, 82; 517 NW2d 270 (1994). But if the defendant did not exhaust his or her peremptory challenges, the defendant has waived any error in whether the trial court should have excused a juror for cause. *Id*. To establish that the trial court's refusal to excuse a juror for cause prejudiced him, the defendant must show that the trial court denied a challenge for cause, the defendant exhausted all peremptory challenges, the defendant desired to excuse another subsequently summoned juror, and the juror the defendant wished to excuse was objectionable. *Id*. at 82, adopting *Poet v Traverse City Osteopathic Hosp*, 433 Mich 448, 241; 445 NW2d 115 (1989).

In this case, Pedersen only used one of his peremptory challenges, and he did not attempt to excuse those jurors that he challenges on appeal. Though Pedersen contends that he could not use his remaining peremptory challenges for fear of a more objectionable juror being seated, Pedersen's fear was baseless because the law adequately addresses this issue. Had the trial court seated an objectionable juror when Pedersen had no more peremptory challenges, he could have demonstrated prejudice. We conclude that Pedersen waived our review of this issue.

Second, Pedersen contends that the trial court improperly re-read the jury instructions and swore the jury pool a second time after allowing a late juror into the pool before voir dire. We conclude that this assertion of error is meritless.

This Court reviews de novo alleged violations of the jury selection process. *People v Fletcher*, 260 Mich App 531, 554; 679 NW2d 127 (2004). The trial court may seat jurors by any fair and impartial method. *Id*. Trial courts are allowed "wide discretion in the manner they employ to achieve the goal of an impartial jury." *People v Sawyer*, 215 Mich App 183, 186-187; 545 NW2d 6 (1996) (quotation marks and citation omitted).

In this case, Pedersen provides no factual basis or legal argument to support his assertions that the jurors would pay less attention to instructions issued twice or that they could have inferred something improper from the late addition. Further, as noted, Pedersen did not exercise all of his peremptory challenges, and he could have excused any specific juror that he did not believe was not paying attention. We conclude that this assertion of error is meritless.

## III. EVIDENTIARY ERRORS

This Court reviews preserved evidentiary issues for an abuse of discretion, *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008), including the trial court's pretrial rulings on motions in limine, *People v Vansickle*, 303 Mich App 111, 117; 842 NW2d 289 (2013). The trial court abuses its discretion when its outcome falls outside the range of reasonable outcomes. *Unger*, 278 Mich App at 217.

First, Pedersen contends that the trial court erroneously denied his motion in limine to exclude the evidence of the victim's reasons for delaying his report to police. We disagree.

Generally, relevant evidence is admissible and irrelevant evidence is not. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In other words, evidence is admissible if it helps shed light on any material point. *People v Murphy (On Remand)*, 282 Mich App 571, 580; 766 NW2d 303 (2009). A witness's credibility is always relevant. *People v Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995).

We conclude that the victim's reason for delaying his disclosure of Pedersen's conduct was relevant to the victim's credibility. In this case, that the victim waited months to disclose the conduct tended to show that the evidence was less likely to be true, and the victim's reasons for disclosing the conduct was helpful to shed light on the reason for the victim's delayed disclosure. The full explanation of the victim's delayed disclosure tended to make a fact of consequence—the victim's credibility—more likely to be true when the delay made his credibility less likely to be true. We conclude that the trial court properly determined that this evidence was relevant.

Second, Pedersen contends that the trial court improperly limited the scope of his cross-examination of the victim. We disagree.

A witness may be cross-examined about his or her credibility. MRE 611(c). Nevertheless, the trial court may limit the scope of questioning "to avoid needless consumption of time." MCR 611(a). A defendant does not have a right to unlimited cross-examination:

> The scope of cross-examination is within the discretion of the trial court. Neither the Sixth Amendment's Confrontation Clause nor due process confers on a defendant an unlimited right to cross-examine on any subject. Cross-examination may be denied with respect to collateral matters bearing only on general credibility, as well as on irrelevant issues. [*People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1992) (internal citations omitted).]

In this case, the victim claimed that he frequently went fishing with Pedersen but he never asked Pedersen to go fishing. During cross-examination, defense counsel asked, "Is there anything that you've ever in your life done with your uncle that you asked him to do it?" The victim responded, "Not that I recall." Defense counsel asked the victim whether he had asked Pedersen to do various specific activities with him. The prosecution objected on grounds of relevance, and the trial court instructed defense counsel to limit his questions "to the time frame at issue[.]" Defense counsel contended that he could cross-examine the victim on "his entire life" because the victim testified that he had never asked Pedersen to do anything with him. The trial court prohibited defense counsel from questioning the victim about his entire life.

We conclude that the trial court properly limited cross-examination. Defense counsel's attempt to impeach the victim's credibility on cross-examination by exploring whether, in the victim's entire life, he had ever asked Pedersen to do "anything" with him was needlessly time-

consuming and cumulative. Further, defense counsel had already attempted to impeach the victim on specific matters before the trial court limited his cross-examination.

Third, Pedersen contends that the trial court improperly allowed the victim to testify about the contents of a police report. We have reviewed the alleged error and conclude that the prosecution used the proper procedure to refresh a witness's memory. The record does not support Pedersen's assertion because the victim did not testify about the contents of the police report.

Fourth, Pedersen contends that the trial court improperly admitted his recorded interview because this evidence lacked a sufficient foundation. Again, we disagree.

MRE 901 provides that a proponent of evidence must provide "evidence sufficient to support a finding that the matter in question is what the proponent claims." But this identification need not be "absolute or certain." *People v O'Brien*, 113 Mich App 183, 204; 317 NW2d 570 (1982). A sufficient foundation exists if there is evidence of (1) the exhibit's identity, and (2) its connection to the crime. *People v Hence*, 110 Mich App 154, 162; 312 NW2d 191 (1981).

In this case, the prosecution offered Pedersen's recorded police interview into evidence. Officer Bernatche testified that the CD contained Pedersen's police interview. He could not remember whether the CD was a complete copy of the interview, and he "believed" the numbers on the CD were the complaint number and the original date of the complaint. Accordingly, the prosecution presented some evidence of the CD's identity and its connection to the crime. The trial court properly ruled that the prosecution laid a sufficient foundation for this evidence.

## IV. DIRECTED VERDICT AND VERDICT AGAINST THE GREAT WEIGHT OF THE EVIDENCE

Pedersen contends that (1) the prosecution's evidence was not sufficient to survive a motion for directed verdict, and (2) the jury's verdict was against the great weight of the evidence. The trial court determined that the prosecution provided sufficient evidence for a rational juror to find that Pedersen committed the elements of the crimes.

This Court reviews de novo a trial court's decision denying a motion for a directed verdict. *People v Couzens*, 480 Mich 240, 244; 747 NW2d 849 (2008). We review the prosecution's evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the prosecution proved the essential elements of the crimes beyond a reasonable doubt. *Id*. The victim's testimony alone may be sufficient to sustain a defendant's conviction. *People v Taylor*, 185 Mich App 1, 8; 460 NW2d 582 (1990).

Generally, courts review a defendant's claim that the jury's verdict was against the great weight of the evidence to determine whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). But a defendant must preserve a claim that the jury's verdict was against the great weight of the evidence by moving for a new trial. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Pedersen did not do so and, therefore, our review is for plain error affecting Pedersen's substantial rights. See *id*.

-4-

On appeal, Pedersen contends that the victim was not credible. The trial court may not decide issues of credibility when deciding a motion for a directed verdict. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). Nor does this Court resolve questions of credibility on appeal. *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998). Conflicting witness testimony creates an issue of credibility, which is for the trier of fact to determine. *Musser*, 259 Mich App at 219. This Court must defer to the trier of fact's credibility determination unless directly contradictory testimony was deprived of all probative value, the trier of fact could not believe it, or it defied indisputable physical facts or realities. *Id*.

In this case, the victim's testimony provided proof on the elements of each crime. While Pedersen contends that the victim was not credible, the victim's credibility is not an issue for the trial court or this Court to decide. The victim's testimony was not directly contradictory, unbelievable, or in conflict with indisputable physical realities. Viewing the testimony in the light most favorable to the prosecutor, there was sufficient evidence on the basis of the victim's testimony alone to create an issue of fact. We conclude that the trial court properly denied Pedersen's motion for a directed verdict, and that the jury's verdict was not against the great weight of the evidence.

## V. PROSECUTORIAL MISCONDUCT

Pedersen contends that the prosecutor committed a variety of misconduct. While we agree that some of the prosecutor's comments were improper, we conclude that Pedersen was not prejudiced by prosecutorial misconduct because the trial court's instructions cured the possible prejudice of the improper comments.

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments and the evidence presented in the case. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Prosecutorial misconduct is a nonconstitutional error unless the misconduct violated a defendant's specific constitutional right or infected the trial with unfairness. *People v Blackmon*, 280 Mich App 253, 260-261, 269; 761 NW2d 172 (2008). The defendant has the burden to establish that it is more probable than not that preserved, nonconstitutional error was outcome determinative. *Id*. at 270.

This Court will not reverse a conviction on the basis of prosecutorial misconduct unless the defendant specifically challenges the alleged misconduct before the trial court, or unless a failure to review the issue would result in the miscarriage of justice. *Unger*, 278 Mich App at 234-235. To the extent that we note Pedersen has not preserved certain claims of prosecutorial misconduct below, we review unpreserved claims of prosecutorial misconduct for plain error affecting a defendant's substantial rights. *Unger*, 278 Mich App at 235. To avoid forfeiture under the plain error standard, a defendant must establish that: (1) an error occurred, (2) the error was plain, and (3) the plain error affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

First, Pedersen asserts that the prosecutor informed the jury during voir dire that he was a former state trooper. The record provides no factual support for this claim. In response to questioning by the trial court, a juror informed the jury pool that the prosecutor used to supervise her husband, a state trooper. There was no action by the prosecutor, much less misconduct.

Second, Pedersen contends that the prosecutor improperly vouched for the victim's credibility during voir dire. A prosecutor may not convey that he or she has special knowledge of a witness's truthfulness. *People v Bahoda*, 448 Mich 261, 277; 531 NW2d 659 (1995). After reviewing the prosecutor's remarks in context, we conclude that the prosecutor's questions, which regarded whether jurors believed that speaking about sexual encounters in front of people could make a teenager uncomfortable, did not improperly vouch for the victim. Further, we note that Pedersen did not request a curative instruction on these questions, which could have cured any possible prejudice.

Third, Pedersen contends that the prosecutor improperly accused him of "browbeating" a potential juror during voir dire. The prosecutor may not "denigrat[e] a defendant with intemperate and prejudicial remarks." *Bahoda*, 448 Mich at 283. After Pedersen's counsel challenged this statement, the trial court ordered the prosecutor to refrain from making inflammatory remarks, and Pedersen did not request a further curative instruction. We are not convinced that this improper remark so prejudiced the jury that reversal is warranted.

Fourth, Pedersen contends that the prosecutor improperly bolstered the victim's credibility by referring to his desire to protect his sisters as "heroic" in opening and closing statements. A prosecutor may argue all the facts in evidence and reasonable inferences as they relate to the prosecution's theory of the case. *Bahoda*, 448 Mich at 282. The prosecutor may also argue from the facts that a witness should or should not be believed. *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005). A prosecutor need not make the blandest possible argument. *Dobek*, 274 Mich App at 66. Reviewed in context, the prosecutor's statements were part of an argument that the victim was credible, despite his delay in reporting Pedersen's conduct. We conclude that these statements were not improper.

Fifth, Pedersen contends that the prosecutor improperly denigrated him by referring to him as the "worst of society" and stating that his account of events was not credible. Pedersen's counsel challenged the prosecutor's statement that he was the "worst of society," and the trial court properly instructed the jury that the prosecutor's opening statements were not evidence. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements[.]" *Unger*, 278 Mich App at 235. The trial court thus mitigated any prejudicial effect of the prosecutor's statement regarding Pedersen as being the "worst of society." Further, the prosecutor's argument regarding Pedersen's credibility was permissible.

Sixth, Pedersen contends that the prosecutor improperly accused the defense counsel of inserting a "patent falsehood" into a question. The prosecutor may not undermine the defendant's presumption of innocence by arguing that defense counsel is intentionally misleading the jury. *Id*. at 236.

In this case, when cross-examining the victim, defense counsel asked the victim whether Pedersen asked the victim to "help" while Pedersen masturbated. The prosecutor objected and

asserted that defense counsel's question contained a "patent falsehood" because the police report did not indicate that the victim used the word "help." The prosecutor then attempted to read from the police report, and defense counsel challenged the prosecutor's attempt to read from the police report. The trial court ruled that defense counsel could ask his question using the word "help" and that the prosecutor could follow up on the issue on redirect examination. Two questions later, the prosecutor again objected and attempted to read from the police report. The trial court again instructed the prosecutor he could follow up on the issue during his redirect examination. During this exchange, Pedersen did not make any challenge on the basis of the denigrating remark.

We conclude that this statement did not constitute clear error affecting Pedersen's substantial rights. We agree that the prosecutor's "patent falsehood" statement was an unnecessary denigration of defense counsel. However, our review of the record reveals extensive contention and instances of rude conduct by both the prosecutor and defense counsel. Given the overall tenor of the case, we conclude that the impropriety of this particular statement was not clear or obvious. We note that while the trial court demonstrated remarkable patience and acuity in its rulings in this case, we cannot reasonably expect that it should have noticed and sua sponte corrected one improper remark. We also conclude that a curative instruction could have cured the potential prejudice of this remark.

Seventh, Pedersen contends that the prosecutor's commentary when stopping and starting the video recording of Pedersen's interview was improper. When introducing the video, the prosecutor noted that he would be "happy to just play it, but there are portions I'm not allowed to play . . . ," the prosecutor stopped the recording at multiple points with the commentary that it was a "point[] where I have to move ahead," and at the conclusion of the video the prosecutor stated that it was "the end of what I'm allowed to play." After the jury recessed, defense counsel stated an objection to the trial court:

> . . . I would ask that when the Jury comes back that the Court provide an additional limiting instruction on the video because [the prosecutor] at several times during the presentation referred to the Jury that he was skipping ahead because I wanted it skipped ahead or I wanted—I forget exactly the language he used, but he made it very clear that it was . . . defense counsel that was trying to have this stuff redacted and I would like the Court to give a limiting instruction that the Court in terms of those portions of the video that we skipped past, the Court had made the determination that those portions were not inadmissible and the Jury should not consider why they didn't see them.

The trial court gave such an instruction when the jury returned.

We agree that the prosecutor's statements were unnecessary and improperly implied that defense counsel was attempting to hide facts from the jury. However, curative instructions are "sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements," and we presume that jurors follow their instructions. *Id.* at 235. Given that the trial court clearly indicated to the jury that it, not the defense counsel, was responsible for deciding what evidence in the video was admissible, we conclude that its instruction cured any prejudice from the prosecutor's statements.

-7-

Finally, Pedersen contends that the prosecutor committed misconduct by improperly denigrating defense counsel's closing argument. We reiterate that a prosecutor may not attempt to argue that defense counsel is intentionally attempting to mislead the jury. *Id*. at 236. We agree that the prosecutor improperly denigrated defense counsel by stating that defense counsel was attempting to distract the jury by treating them "like a two-year old" and referring to defense counsel's closing argument as a "show." However, defense counsel challenged the prosecutor's statements, and the trial court instructed the prosecutor to "not denigrate the defense[.]" The trial court also later instructed the jury that the arguments of the attorneys were not evidence. Again, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Id*. at 236. We conclude that the trial court's instructions sufficiently cured the prejudice of the prosecutor's improper comments in this case.

To the extent that Pedersen may have raised additional issues of prosecutorial misconduct, we conclude that he has abandoned them by failing to support them, since we are unable to separate them from Pedersen's other allegations of prosecutorial misconduct. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004).

## VI. CUMULATIVE ERRORS

This Court reviews a defendant's claim of cumulative error to determine whether the combination of alleged errors deprived the defendant of a fair trial. *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001). The Federal and Michigan Constitutions provide that the state cannot deny a person "life, liberty, or property without due process of law." US Const, Am XIV; Const 1963, art 1, § 17. Thus, criminal prosecutions must comply with " 'prevailing notions of fundamental fairness.' " *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006), quoting *Pennsylvania v Ritchie*, 480 US 39, 56; 107 S Ct 989; 94 L Ed 2d 40 (1987). For this Court to reverse on grounds of cumulative error, "the cumulative effect of the errors must undermine the confidence in the reliability of the verdict[.]" *Dobek*, 274 Mich App at 106.

Pedersen contends that the cumulative effect of the errors in this case deprived him of a fair trial. We disagree and conclude that the cumulative errors did not deprive Pedersen of a fair trial. Pedersen's only meritorious allegations of error involved prosecutorial misconduct. However, in each of those instances, defense counsel challenged the prosecutor's conduct, and the trial court sufficiently cured the prejudicial effect of the statements. Viewing the errors as a whole, we conclude that they were not so egregious that they seriously prejudiced Pedersen and deprived him of a fair trial. See *id*. at 107.

## VII. SENTENCING

Pedersen contends that the trial court improperly assessed Offense Variable (OV) 10, which concerns exploiting vulnerable victims, and Prior Record Variable (PRV) 7, which concerns concurrent convictions. We conclude that these issues are moot. If a defendant has already served his or her minimum sentence, "this Court is unable to provide a remedy for the alleged error, [and] the issue is moot and need not be addressed." *People v Tombs*, 260 Mich App 201, 220; 679 NW2d 77 (2003). Pedersen completed his minimum sentence on or before December 21, 2014. Accordingly, we conclude that this issue is moot, and we decline to address it.

## VIII. CONCLUSION

In sum, the vast majority of Pedersen's allegations of error are without merit. The jury selection did not prejudice Pedersen, and the trial court's evidentiary rulings were proper. The evidence was sufficient to sustain Pedersen's convictions. While the prosecutor did in some instances make improper comments, the trial court responded to those instances with admonitions and curative instructions, and the result did not seriously prejudice Pedersen or deprive him of a fair trial. We decline to review Pedersen's sentencing issues because those issues are moot.

Affirmed.

/s/ Pat M. Donofrio
/s/ Peter D. O'Connell
/s/ Amy Ronayne Krause